# Matter of A-R-C-G- et al., Respondents

*Decided August 26, 2014*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Depending on the facts and evidence in an individual case, "married women in Guatemala who are unable to leave their relationship" can constitute a cognizable particular social group that forms the basis of a claim for asylum or withholding of removal under sections 208(a) and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a) and 1231(b)(3) (2012).

FOR RESPONDENT: Roy Petty, Esquire, Rogers, Arkansas

FOR THE DEPARTMENT OF HOMELAND SECURITY: George R. Martin, Appellate Counsel

AMICI CURIAE: American Immigration Lawyers Association;[1] Center for Gender & Refugee Studies;[2] Federation for American Immigration Reform;[3] National Immigrant Justice Center;[4] United Nations High Commissioner for Refugees[5] and Williams & Connolly, LLP[6]

BEFORE: Board Panel: ADKINS-BLANCH, Vice-Chairman; MILLER and GREER, Board Members.

ADKINS-BLANCH, Vice Chairman:

In a decision dated October 14, 2009, an Immigration Judge found the respondents removable and denied their applications for asylum and withholding of removal under sections 208(a) and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a) and 1231(b)(3) (2006). The respondents have appealed from that decision, contesting only the denial of their applications for relief from removal. We find that the lead respondent, a victim of domestic violence in her native country, is a

---

[1]  Phillip L. Torrey, Deborah E. Anker, Sabrineh Ardalan, Benjamin Casper, and Fatma E. Marouf, Esquires
[2]  Karen Musalo, Blaine Bookey, Lisa Frydman, and Christine Lin, Esquires
[3]  Michael M. Hethmon, Esquire
[4]  Lisa Koop, Ashley Huebner, and Charles Roth, Esquires
[5]  Pamela Goldberg, Esquire
[6]  Allison B. Jones and Ana C. Reyes, Esquires

member of a particular social group composed of "married women in Guatemala who are unable to leave their relationship." The record will be remanded to the Immigration Judge for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The lead respondent is the mother of the three minor respondents.[7] The respondents are natives and citizens of Guatemala who entered the United States without inspection on December 25, 2005. The respondent filed a timely application for asylum and withholding of removal under the Act.[8]

The Immigration Judge found the respondent to be a credible witness, which is not contested on appeal. It is undisputed that the respondent, who married at age 17, suffered repugnant abuse by her husband. This abuse included weekly beatings after the respondent had their first child.[9] On one occasion, the respondent's husband broke her nose. Another time, he threw paint thinner on her, which burned her breast. He raped her.

The respondent contacted the police several times but was told that they would not interfere in a marital relationship. On one occasion, the police came to her home after her husband hit her on the head, but he was not arrested. Subsequently, he threatened the respondent with death if she called the police again. The respondent repeatedly tried to leave the relationship by staying with her father, but her husband found her and threatened to kill her if she did not return to him. Once she went to Guatemala City for about 3 months, but he followed her and convinced her to come home with promises that he would discontinue the abuse. The abuse continued when she returned. The respondent left Guatemala in December 2005, and she believes her husband will harm her if she returns.

The Immigration Judge found that the respondent did not demonstrate that she had suffered past persecution or has a well-founded fear of future persecution on account of a particular social group comprised of "married women in Guatemala who are unable to leave their relationship." The Immigration Judge determined that there was inadequate evidence that the respondent's spouse abused her "in order to overcome" the fact that she

---

[7] We will refer to the lead respondent as "the respondent." The minor respondents are derivatives of their mother's asylum application.

[8] The respondent's asylum application, which was filed after May 11, 2005, is governed by the amendments to the Act brought about by the REAL ID Act of 2005, Division B of Pub. L. No. 109-13, 119 Stat. 302. *See Matter of S-B-*, 24 I&N Dec. 42 (BIA 2006).

[9] This child was born in 1994 and was residing in Guatemala at the time of the proceedings.

was a "married woman in Guatemala who was unable to leave the relationship." He found that the respondent's abuse was the result of "criminal acts, not persecution," which were perpetrated "arbitrarily" and "without reason." He accordingly found that the respondent did not meet her burden of demonstrating eligibility for asylum or withholding of removal under the Act.

On appeal, the respondent asserts that she has established eligibility for asylum as a victim of domestic violence. The Department of Homeland Security ("DHS") initially responded that the Immigration Judge's decision should be upheld. We subsequently requested supplemental briefing from both parties and amici curiae to address the issue whether domestic violence can, in some instances, form the basis for a claim of asylum or withholding of removal under sections 208(a) and 241(b)(3) of the Act.[10] *See Matter of R-A-*, 22 I&N Dec. 906 (BIA 1999) (en banc), *vacated*, 22 I&N Dec. 906 (A.G. 2001), *remanded*, 23 I&N Dec. 694 (A.G. 2005), *remanded and stay lifted*, 24 I&N Dec. 629 (A.G. 2008).

In response to our request for supplemental briefing, the DHS now concedes the respondent established that she suffered past harm rising to the level of persecution and that the persecution was on account of a particular social group comprised of "married women in Guatemala who are unable to leave their relationship." However, the DHS seeks remand, arguing that "further factual development of the record and related findings by the Immigration Judge are necessary on several issues" before the asylum claim can be properly resolved. The respondent opposes remand and maintains that she has met her burden of proof regarding all aspects of her asylum claim. We accept the parties' position on the existence of harm rising to the level of past persecution, the existence of a valid particular social group, and the issue of nexus under the particular facts of this case. We will remand the record for further proceedings.

## II.  ANALYSIS

### A.  Particular Social Group

The question whether a group is a "particular social group" within the meaning of the Act is a question of law that we review de novo. 8 C.F.R. § 1003.1(d)(3)(ii) (2014); *see Malonga v. Mukasey*, 546 F.3d 546, 553 (8th

---

[10] We acknowledge with appreciation the thoughtful arguments raised in the briefs submitted by amici curiae.

Cir. 2008). The question whether a person is a member of a particular social group is a finding of fact that we review for clear error. 8 C.F.R. § 1003.1(d)(3)(i).

We initially considered whether victims of domestic violence can establish membership in a particular social group in *Matter of R-A-*, 22 I&N Dec. at 907. We reversed an Immigration Judge's finding that the respondent in that case was eligible for asylum on account of her membership in a particular social group consisting of "Guatemalan women who have been involved intimately with Guatemalan male companions, who believe that women are to live under male domination." *Id.* at 911. The majority opinion reasoned that the proffered social group was "defined principally, if not exclusively, for purposes of" the asylum case and that it was unclear whether "anyone in Guatemala perceives this group to exist in any form whatsoever," including spousal abuse victims themselves or their male oppressors. *Id.* at 918. We further reasoned that even if the proffered social group was cognizable, the respondent did not establish that her husband harmed her on account of her membership in the group. *Id.* at 920–23.

The Acting Commissioner of the former Immigration and Naturalization Service ("INS") referred the decision to the Attorney General for review.[11] In 2001, Attorney General Janet Reno vacated our decision in *Matter of R-A-*, 22 I&N Dec. 906. She remanded the case for the Board's reconsideration following final publication of proposed regulations that addressed the meaning of various terms in asylum law, including "persecution," "membership in a particular social group," and "on account of" a protected characteristic. *See* Asylum and Withholding Definitions, 65 Fed. Reg. 76,588, 76,597–98 (proposed Dec. 7, 2000).

On February 21, 2003, Attorney General John Ashcroft certified *Matter of R-A-* for review and provided an opportunity for additional briefing. He remanded the case to the Board in 2005, directing us to reconsider our decision "in light of the final rule." *Matter of R-A-*, 23 I&N Dec. 694. The proposed regulations were not finalized. On September 25, 2008, Attorney General Michael Mukasey certified the case for his review and issued a decision ordering us to reconsider it, removing the requirement that we await the issuance of the final regulations. *Matter of R-A-*, 24 I&N Dec. 629. *Matter of R-A-* is no longer pending.[12]

---

[11] The functions of the former INS were transferred to the DHS on March 1, 2003, pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, § 402, 116 Stat. 2135, 2177−78 (Nov. 25, 2002).

[12] On December 4, 2008, we granted a joint motion filed by the parties, requesting remand to consider *Matter of R-A-* in light of recent jurisprudence. In remanded

(continued . . .)

## B. Respondent's Claim

The DHS has conceded that the respondent established harm rising to the level of past persecution on account of a particular social group comprised of "married women in Guatemala who are unable to leave their relationship." The DHS's position regarding the existence of such a particular social group in Guatemala under the facts presented in this case comports with our recent precedents clarifying the meaning of the term "particular social group." *Matter of M-E-V-G-*, 26 I&N Dec. 227 (BIA 2014); *Matter of W-G-R-*, 26 I&N Dec. 208 (BIA 2014). In this regard, we point out that any claim regarding the existence of a particular social group in a country must be evaluated in the context of the evidence presented regarding the particular circumstances in the country in question.

In *Matter of W-G-R-* and *Matter of M-E-V-G-*, we held that an applicant seeking asylum based on his or her membership in a "particular social group" must establish that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.[13] The "common immutable characteristic" requirement incorporates the standard set forth in *Matter of Acosta*, 19 I&N Dec. 211, 233–34 (BIA 1985). The "particularity" requirement addresses "the question of delineation." *Matter of W-G-R-*, 26 I&N Dec. at 214. That is, it clarifies the point that "not every 'immutable characteristic' is sufficiently precise to define a particular social group." *Matter of M-E-V-G-*, 26 I&N Dec. at 239. The "social distinction" requirement renames the former concept of "social visibility" and clarifies "the importance of 'perception' or 'recognition' to the concept of the particular social group." *Matter of W-G-R-*, 26 I&N Dec. at 216.

In this case, the group is composed of members who share the common immutable characteristic of gender. *See Matter of Acosta*, 19 I&N Dec. at 233 (finding that sex is an immutable characteristic); *see also Matter of W-G-R-*, 26 I&N Dec. at 213 ("The critical requirement is that the defining characteristic of the group must be something that either cannot be changed or that the group members should not be required to change in order to avoid persecution."). Moreover, marital status can be an immutable

---

proceedings, the parties stipulated that the respondent was eligible for asylum. Her application was granted on December 10, 2009.

[13] We explained that this three-part test is not a departure from the principles established in our prior case law regarding particular social groups. *See Matter of E-A-G-*, 24 I&N Dec. 591 (BIA 2008); *Matter of S-E-G-*, 24 I&N Dec. 579 (BIA 2008); *Matter of A-M-E- & J-G-U-*, 24 I&N Dec. 69 (BIA 2007); *Matter of C-A-*, 23 I&N Dec. 951 (BIA 2006); *Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985).

characteristic where the individual is unable to leave the relationship. A determination of this issue will be dependent upon the particular facts and evidence in a case. A range of factors could be relevant, including whether dissolution of a marriage could be contrary to religious or other deeply held moral beliefs or if dissolution is possible when viewed in light of religious, cultural, or legal constraints. In evaluating such a claim, adjudicators must consider a respondent's own experiences, as well as more objective evidence, such as background country information.

The DHS concedes that the group in this case is defined with particularity. The terms used to describe the group—"married," "women," and "unable to leave the relationship"—have commonly accepted definitions within Guatemalan society based on the facts in this case, including the respondent's experience with the police. *See Matter of M-E-V-G-*, 26 I&N Dec. at 239; *Matter of W-G-R-*, 26 I&N Dec. at 214. In some circumstances, the terms can combine to create a group with discrete and definable boundaries. We point out that a married woman's inability to leave the relationship may be informed by societal expectations about gender and subordination, as well as legal constraints regarding divorce and separation. *See Matter of W-G-R-*, 26 I&N Dec. at 214 (observing that in evaluating a group's particularity, it may be necessary to take into account the social and cultural context of the alien's country of citizenship or nationality); Committees on Foreign Relations and Foreign Affairs, 111th Cong., 2d Sess., *Country Reports on Human Rights Practices for 2008* 2598 (Joint Comm. Print 2010), *available at* http://www.gpo.gov /fdsys/pkg/CPRT-111JPRT62931/pdf/CPRT-111JPRT62931.pdf ("*Country Reports*") (discussing sexual offenses against women as a serious societal problem in Guatemala); Bureau of Human Rights, Democracy, and Labor, U.S. Dep't of State, *Guatemala Country Reports on Human Rights Practices–2008* (Feb. 25, 2009), http://www.state.gov/j/drl/rls/hrrpt /2008/wha/119161.htm.[14] In this case, it is significant that the respondent sought protection from her spouse's abuse and that the police refused to assist her because they would not interfere in a marital relationship.

The group is also socially distinct within the society in question. *Matter of M-E-V-G-*, 26 I&N Dec. at 240 ("To be socially distinct, a group need not be seen by society; rather it must be perceived as a group by society."). To have "social distinction," there must be "evidence showing that society

---

[14] Notably, the group is not defined by the fact that the applicant is subject to domestic violence. *See Matter of W-G-R-*, 26 I&N Dec. at 215 (noting that circuit courts "have long recognized that a social group must have 'defined boundaries' or a 'limiting characteristic,' other than the risk of being persecuted").

in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group." *Matter of W-G-R-*, 26 I&N Dec. at 217. The group's recognition is "determined by the perception of the society in question, rather than by the perception of the persecutor."[15] *Matter of M-E-V-G-*, 26 I&N Dec. at 242; *see also Matter of W-G-R-*, 26 I&N Dec. at 214 (noting that there is some degree of overlap between the particularity and social distinction requirements because both take societal context into account).

When evaluating the issue of social distinction, we look to the evidence to determine whether a society, such as Guatemalan society in this case, makes meaningful distinctions based on the common immutable characteristics of being a married woman in a domestic relationship that she cannot leave. Such evidence would include whether the society in question recognizes the need to offer protection to victims of domestic violence, including whether the country has criminal laws designed to protect domestic abuse victims, whether those laws are effectively enforced, and other sociopolitical factors. *Cf. Davila-Mejia v. Mukasey*, 531 F.3d 624, 629 (8th Cir. 2008) (finding that competing family business owners are not a particular social group because they are not perceived as a group by society).

Supporting the existence of social distinction, and in accord with the DHS's concession that a particular social group exists, the record in this case includes unrebutted evidence that Guatemala has a culture of "machismo and family violence." *See Guatemala Failing Its Murdered Women: Report*, Canadian Broad. Corp. (July 18, 2006), http://www.cbc.ca/news/world/guatemala-failing-its-murdered-women-report-1.627240. Sexual offenses, including spousal rape, remain a serious problem. *See Country Reports*, *supra*, at 2608. Further, although the record reflects that Guatemala has laws in place to prosecute domestic violence crimes, enforcement can be problematic because the National Civilian Police "often failed to respond to requests for assistance related to domestic violence." *Id.* at 2609.

We point out that cases arising in the context of domestic violence generally involve unique and discrete issues not present in other particular social group determinations, which extends to the matter of social distinction. However, even within the domestic violence context, the issue of social distinction will depend on the facts and evidence in each

---

[15] The perception of the persecutor, however, is critical to the question whether a person is persecuted "on account of" membership in a particular social group. *See Matter of M-E-V-G-*, 26 I&N Dec. at 242; *Matter of W-G-R-*, 26 I&N Dec. at 218.

individual case, including documented country conditions; law enforcement statistics and expert witnesses, if proffered; the respondent's past experiences; and other reliable and credible sources of information.[16]

## C. Remaining Issues

The DHS stipulates that the respondent suffered mistreatment rising to the level of past persecution. The DHS also concedes in this case that the mistreatment was, for at least one central reason, on account of her membership in a cognizable particular social group. We note that in cases where concessions are not made and accepted as binding, these issues will be decided based on the particular facts and evidence on a case-by-case basis as addressed by the Immigration Judge in the first instance. *See generally Matter of N-M-*, 25 I&N Dec. 526 (BIA 2011); *Matter of J-B-N- & S-M-*, 24 I&N Dec. 208 (BIA 2007). In particular, the issue of nexus will depend on the facts and circumstances of an individual claim.

We will remand the record for the Immigration Judge to address the respondent's statutory eligibility for asylum in light of this decision. Under controlling circuit law, in order for the respondent to prevail on an asylum claim based on past persecution, she must demonstrate that the Guatemalan Government was unwilling or unable to control the "private" actor. *See Gutierrez-Vidal v. Holder*, 709 F.3d 728, 732–33 (8th Cir. 2013); *Menjivar v. Gonzales*, 416 F.3d 918, 920–22 (8th Cir. 2005).

If the respondent succeeds in establishing that the Government was unwilling or unable to control her husband, the burden shifts to the DHS to demonstrate that there has been a fundamental change in circumstances such that the respondent no longer has a well-founded fear of persecution. 8 C.F.R. § 1208.13(b)(1)(i)(A), (ii) (2014). Alternatively, the DHS would bear the burden of showing that internal relocation is possible and is not unreasonable. 8 C.F.R. § 1208.13(b)(1)(i)(B), (ii); *see also Matter of M-Z-M-R-*, 26 I&N Dec. 28 (BIA 2012).[17] The Immigration Judge may also consider, if appropriate, whether the respondent is eligible for humanitarian asylum. *See* 8 C.F.R. § 1208.13(b)(1)(iii).

---

[16] Amici for the American Immigration Lawyers Association, the United Nations High Commissioner for Refugees, and the Center for Gender & Refugee Studies argue that gender alone should be enough to constitute a particular social group in this matter. Since the respondent's membership in a particular social group is established under the aforementioned group, we need not reach this issue.

[17] On remand, the Immigration Judge should reevaluate this issue based on the entire evidentiary record, including any updated evidence.

## III.  CONCLUSION

For the foregoing reasons, we will remand the record to the Immigration Judge for further proceedings and for the entry of a new decision.  On remand, the Immigration Judge should afford the parties the opportunity to update the evidentiary record.

**ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.