Guzman-Alvarez v. Sessions

BIA
Nelson, IJ
A206 638 444

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of October, two thousand seventeen.

PRESENT:
> JON O. NEWMAN,
> RICHARD C. WESLEY,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges.*

_____

JACQUELINE LISSETTE GUZMAN-ALVAREZ,
> *Petitioner,*

v.                                                    16-904
                                                      NAC

JEFFERSON B. SESSIONS III,
UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:          Kathryn E. Cimone, Jadeja & Cimone, LLP, Hempstead, N.Y.

FOR RESPONDENT:          Chad A. Readler, Acting Assistant Attorney General; Jessica A. Dawgert, Senior Litigation Counsel;

Tracey N. McDonald, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Jacqueline Lissette Guzman-Alvarez, a native and citizen of El Salvador, seeks review of a February 23, 2016 decision of the BIA affirming an August 18, 2015 decision of an Immigration Judge ("IJ") denying Guzman-Alvarez's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Jacqueline Lissette Guzman-Alvarez,* No. A206 638 444 (B.I.A. Feb. 23, 2016), *aff'g* No. A206 638 444 (Immig. Ct. N.Y. City Aug. 18, 2015). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the IJ's decision as modified by the BIA, i.e., minus the grounds that the BIA did not reach. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). We therefore review only the agency's conclusion that Guzman-Alvarez failed to establish her membership in a cognizable particular social

2

group. We review factual findings under the substantial evidence standard and questions of law—including the question whether a group constitutes a particular social group—de novo. *Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014).

"The burden of proof is on the applicant to establish that the applicant is a refugee," 8 U.S.C. § 1158(b)(1)(B)(i), and "the applicant [must] satisf[y] the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee," *id.* § 1158(b)(1)(B)(ii). One way that an applicant can demonstrate eligibility for asylum and withholding of removal is to show that she was persecuted on account of her membership in a particular social group. *Id.* §§ 1158(b)(1)(B)(i); 1231(b)(3)(A). To be cognizable, a particular social group must satisfy all three of the following requirements. *Paloka*, 762 F.3d at 195-96. First, it must be composed of members who "share a common immutable characteristic." *Id*. at 195 (quoting *In re Acosta*, 19 I & N Dec. 211, 233 (BIA 1985)). An immutable characteristic is one that members of the group "either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Id*. (quoting *In re*

3

*Acosta*, 19 I & N Dec. at 233). Second, the particular social group must be defined with particularity, meaning that the group must be "discrete and have definable boundaries—it must not be amorphous, overbroad, diffuse, or subjective." *Id*. at 196 (quoting *Matter of M-E-V-G-*, 26 I & N Dec. 227, 239 (BIA 2014)). Third, the particular social group must be "socially distinct within the society in question," meaning that it is "perceived as a group by society." *Id*. (quoting *Matter of M-E-V-G-*, 26 I & N Dec. at 237, 240).

The BIA has determined that women who have fled domestic violence may qualify for asylum as members of a particular social group when, based on their circumstances and circumstances in the country from which they have fled, each of those requirements is met. *Matter of A-R-C-G-*, 26 I & N Dec. 388, 390 (BIA 2014) (concluding that a proposed group of "married women in Guatemala who are unable to leave their relationship" satisfied the three requirements for a particular social group). The BIA's decision in *Matter of A-R-C-G-* offers guidance for this case-specific inquiry. We conclude that, in light of the principles expressed in *Matter of A-R-C-G-* and the insufficient and vague evidence presented below, the agency did not err in concluding that Guzman-Alvarez failed to carry her

burden of establishing membership in a cognizable particular social group.  Specifically, Guzman-Alvarez did not present sufficient evidence to fulfill the "immutable characteristic" and "defined-with-particularity" requirements.

First, as to the "immutable characteristic" requirement, gender is an immutable characteristic and the BIA has determined that "marital status can be an immutable characteristic where the individual is unable to leave the relationship."  *Id.* at 392-93.  When considering whether a characteristic is immutable, "adjudicators must consider a respondent's own experiences, as well as more objective evidence, such as background country information."  *Id*. at 393.  Here, based on the evidence put forward by Guzman-Alvarez, the agency did not err in concluding that Guzman-Alvarez was ineligible for relief.

The standards set forth in the *Matter of A-R-C-G-* refer to "marital status" and the importance of a fact-specific, case-by-case inquiry in assessing whether "dissolution of a marriage could be contrary to religious or other deeply held moral beliefs" or whether "dissolution is possible when viewed in light of religious, cultural, or legal constraints" and the applicant's "own experiences."  *Id*. at 392-93.  In *Matter of*

5

*A-R-C-G-*, the applicant "suffered repugnant abuse by her husband," including "weekly beatings," a broken nose, rape, and an incident in which her husband threw paint thinner on the applicant, burning her breast. *Id.* at 389. The applicant "contacted the police several times but was told that they would not interfere in a marital relationship. On one occasion, the police came to her home after her husband hit her on the head, but he was not arrested." *Id.* The BIA in *Matter of A-R-C-G-* found that "it [wa]s significant that the [applicant] sought protection from her spouse's abuse and that the police refused to assist her because they would not interfere in a marital relationship." *Id.* at 393. Additionally, the applicant in *Matter of A-R-C-G-* "repeatedly tried to leave the relationship by staying with her father, but her husband found her and threatened to kill her if she did not return to him." *Id.* at 389.

Here, in contrast, although Guzman-Alvarez and Santos had three children and lived together as a family for approximately 14 years, they never married. In *Matter of A-R-C-G-*, the applicant was unable to leave her husband because he followed her and threatened her with death if she did not return. However, Guzman-Alvarez testified that, since April 2014, she

6

had lost communication with Santos (although a female cousin reported that Santos had sent the cousin a Facebook message stating that he was looking for her). Additionally, unlike the applicant in *Matter of A-R-C-G-,* Guzman-Alvarez never complained to the police. Finally, in the proceedings below, the agency focused on evidence showing that Guzman-Alvarez was able to run errands and escape to the United States, which was rebutted only by vague and undetailed testimony, to support its finding that the applicant had not shown an inability to leave her relationship. Based on our review of the record, we find no error in the conclusion that Guzman-Alvarez failed to meet the "immutable characteristic" requirement.

Substantial evidence similarly supports the agency's determination that Guzman-Alvarez failed to satisfy the "defined-with-particularity" requirement. A social group is "defined with particularity" when there is a "clear benchmark for determining who falls within the group." *Paloka*, 762 F.3d at 196 (quoting *Matter of M-E-V-G-*, 26 I & N Dec. at 239); *see Matter of A-R-C-G-*, 26 I & N Dec. at 393 (looking to the police department's refusal to protect the applicant when determining that the applicant satisfied the particularity requirement). Here, the agency concluded that Guzman-Alvarez's social group

7

was too broad.  This conclusion is amply supported by the record which shows that Guzman-Alvarez was not married to her abuser, never complained to the police, and otherwise offered only vague testimony in arguing that her particular social group was defined with particularity.  Taking the record as a whole, we again find no error in the conclusion that Guzman-Alvarez failed to meet the "defined-with-particularity" requirement.

We have considered Guzman-Alvarez's remaining claims and conclude that they, too, are without merit.  For the foregoing reasons, we DENY the petition for review.  Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8