**NON- PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3097
_____


ANA LETICIA PADILLA-MALDONADO; E.J.P.,

                                                            Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

                                                            Respondent


_____


On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos.: A208-546-483 and A208-546-484)
Immigration Judge: Honorable Lisa de Cardona

_____


Submitted under Third Circuit L.A.R. 34.1(a)
on July 10, 2018

Before: SHWARTZ, NYGAARD, and RENDELL, *Circuit Judges*.


(Opinion filed: October 9, 2018)

―――――――――

**O P I N I O N**[*]

―――――――――

**RENDELL,** *Circuit Judge*:

Ana Leticia Padilla-Maldonado ("Padilla-Maldonado"), a Salvadoran victim of domestic abuse, petitions for review of an order of the Board of Immigration Appeals ("BIA") denying her application, on behalf of herself and her minor son, E.J.P., for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The BIA agreed with the Immigration Judge ("IJ"), who found that Padilla-Maldonado had failed: (1) to corroborate her testimony with statements from her current partner and aunt or sufficiently explain her failure to do so, and thus did not meet her burden of proof of eligibility for asylum and withholding, and (2) to demonstrate, for purposes of her CAT claim, a likelihood of torture by, or with the acquiescence of, the Salvadoran government. Because it appears that the IJ did not provide Padilla-Maldonado with notice of the corroboration the IJ would require from Padilla-Maldonado's partner and aunt, we will grant the petition in part and remand as to the asylum and withholding claims. With respect to the CAT claim, however, because substantial evidence supports the BIA's ruling, we will deny the petition. On remand, the IJ should also consider whether, in light of the Attorney General's overruling of *Matter of A-R-C-G-*, Padilla-

―――――――――――――――――

[*] This disposition is not an opinion of the full Court, and pursuant to I.O.P. 5.7, does not constitute binding precedent.

Maldonado has established membership in a particular social group in order to be eligible for asylum.

## I. Factual Background

Padilla-Maldonado and her son are natives and citizens of El Salvador. They entered the United States near Hidalgo, Texas, in October of 2015, after escaping alleged domestic abuse at the hands of her former partner, Santos Pablo Almendarez ("Pablo"). Padilla-Maldonado and Pablo began dating in 2012, when Pablo lived with Padilla-Maldonado's aunt, Petrona. They eventually moved in together and lived with E.J.P. (who is not Pablo's son), Petrona, Petrona's husband, and several cousins.

In June or July of 2015, Padilla-Maldonado expressed to Pablo that she wished to end their relationship. Around the same time, she began a long-distance relationship with Ismael Turcios, a former acquaintance who lived in the United States, and with whom Padilla-Maldonado currently lives and has a U.S. citizen son. Padilla-Maldonado testified before the IJ that once Pablo learned that Padilla-Maldonado was communicating with Turcios in August of 2015, he became physically abusive toward her.

The first assault occurred when Pablo woke Padilla-Maldonado up in the middle of the night, grabbed her by the neck, and threatened to "kill her and make her child disappear." A.25–26; A. 52.[1] The second assault happened while Padilla-Maldonado was speaking with Turcios. Pablo again grabbed Padilla-Maldonado by the neck, when E.J.P.

---

[1] It is unclear whether E.J.P. and Padilla-Maldonado's cousins, who were sleeping in the same room, were awoken by this assault.

approached, asking for food, and Pablo threatened E.J.P., as well. Pablo also seized Padilla-Maldonado's phone, which inadvertently recorded the encounter with E.J.P. and sent it to Turcios.

A third physical assault occurred when Pablo grabbed Padilla-Maldonado by her hands and bruised her, before Petrona arrived and stopped him. Thereafter, Padilla-Maldonado went to a private clinic to have her injuries examined and to consult the doctor about not sleeping due to the abuse. The doctor prescribed medication, administered an injection, recommended an x-ray, and noted Padilla-Maldonado's bruises on her left hand from her "life partner," who "suppressed [Padilla-Maldonado's] departure to consult with [the] doctor." A. 98. The doctor also wrote, "Patient with a state of panic, anxiety and depression who at the time with nervous breakdown is given treatment." *Id.*

In addition, Padilla-Maldonado testified that during August and September of 2015, Pablo raped her approximately two times a week. Each time, Pablo would rape her, throw her down, hit her, and threaten to kill her and make her children disappear. Padilla-Maldonado attested that although others slept in the same room as she, none were awakened by these incidents, because Pablo threatened her not to scream, and because sometimes she was raped outside, on her way to her grandparents' house, or in a wooded area.

Padilla-Maldonado testified that she did not report this abuse to the police because Pablo told her she would not be believed if she did. She claimed that she feared Pablo had gang affiliations, but was not certain—her fears were based on his having made gang

4

symbols or signs, and on rumors that Pablo was spending time with gang members. Similarly, Padilla-Maldonado claims she did not go to the hospital for fear of having to answer questions about her injuries.

Finally, Petrona encouraged Padilla-Maldonado to seek refuge in the United States. On September 26, 2015, Padilla-Maldonado and E.J.P. left El Salvador for the United States. Padilla-Maldonado and Pablo have not been in contact since that date.

## II.    Procedural History

Padilla-Maldonado applied for asylum, withholding, and protection under the CAT on behalf of herself and E.J.P., who is a minor. At Padilla-Maldonado's asylum hearing before the Immigration Court, the IJ found that Padilla-Maldonado had failed to corroborate her testimony and allegations of abuse with readily available evidence and noted inconsistencies in her testimony. Thus, the IJ denied Padilla-Maldonado's claim to asylum or withholding because of her failure to meet her burden of proof to demonstrate past persecution or a well-founded fear of future persecution due to her membership in a particular social group. The IJ also denied her CAT claim for a failure to demonstrate that it is more likely than not that Padilla-Maldonado would be tortured upon return to El Salvador, either by the government or at its acquiescence. The BIA affirmed the IJ's determination that, due to her failure to adequately explain her lack of corroboration, Padilla-Maldonado did not meet her burden of proving her eligibility for asylum or withholding. Finally, the BIA affirmed the IJ's determination that Padilla-Maldonado had

5

not demonstrated her eligibility for protection under the CAT, for the same reasons as articulated by the IJ.

### III. Jurisdiction and Standard of Review

We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252(a)(1). Where the BIA issues an independent decision that relies on an IJ's legal conclusions and findings of fact, we review both the IJ's decision and the BIA's. *Sandie v. Att'y Gen.,* 562 F.3d 246, 250 (3d Cir. 2009). We uphold the BIA's decision if the findings of fact are supported by substantial evidence. *INS v. Elias-Zacarias,* 502 U.S. 478, 481 (1992); *Camara v. Att'y Gen.*, 580 F.3d 196, 201 (3d Cir. 2009). "Under that deferential standard, we must uphold the agency's determination unless the evidence would compel any reasonable fact finder to reach a contrary result." *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684 n.5 (3d Cir. 2015).

### IV. Asylum and Withholding of Removal

To qualify for asylum, it is the applicant's burden to prove that she is "unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Garcia v. Att'y Gen.*, 665 F.3d 496, 503 (3d Cir. 2011) (quoting 8 U.S.C. § 1101(a)(42)(A)); *see also* 8 C.F.R. § 1208.13. To be eligible for withholding of removal, an applicant must show "a clear probability of persecution." *INS*

6

*v. Stevic*, 467 U.S. 407, 430 (1984).

The IJ found cognizable Padilla-Maldonado's particular social group, "Salvadoran women in domestic relationships who are unable to leave," which paralleled the proposed social group in *Matter of A-R-C-G-*, 26 I & N Dec. 388 (BIA 2014), "married women in Guatemala who are unable to leave their relationship." A. 30.[2] The IJ determined that Padilla-Maldonado did not meet her burden of proof to corroborate her otherwise credible testimony.

"Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii). This is particularly true when the testimony that requires corroboration is "central to an applicant's claim." *Sandie*, 562 F.3d at 252. We held in *Chukwu v. Attorney General*, "the IJ must give the applicant notice of what corroboration will be expected and an opportunity to present an explanation if the applicant cannot produce such corroboration." 484 F.3d 185, 192 (3d Cir. 2007). Additionally, before an IJ or the BIA may conclude that the applicant failed to meet her burden of proof due to a lack of corroboration, there is a three-part inquiry: the adjudicator must 1) identify facts where corroboration is reasonably expected; 2) determine whether the applicant has corroborated these facts; and 3) if not, determine whether there is an adequate

---

[2] The Government submitted a letter pursuant to Fed. R. App. P. 28(j) informing the Court that the Attorney General has overruled the Board's decision in *Matter of A-R-C-G-* finding this particular social group to be cognizable. *Matter of A-B-*, 27 I & N Dec. 316, 317 (A.G. 2018). We will discuss this *infra* section V.

explanation for the inability to corroborate. *See Sandie*, 562 F.3d at 253; *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001).

Specifically, the IJ identified three parts of Padilla-Maldonado's testimony where she failed to corroborate her claims or explain her failure to do so, when such corroboration "should reasonably be expected." A. 29. First, the IJ found it curious that Turcios—who lives with Padilla-Maldonado, was threatened by Pablo, and received the recording of an incident in which Pablo was abusive to Padilla-Maldonado—failed to testify or provide a written statement. When probed as to the reason for Turcios's absence, Padilla-Maldonado stated that he was working and did not receive permission to come and testify, because after he accompanied Padilla-Maldonado to prior appointments with her doctor or lawyer, he was instructed not to miss work further.

Second, the IJ noted that Padilla-Maldonado and Turcios were unable to save or submit copies of the threatening text messages Pablo sent Turcios, or the recording wherein Pablo threatened E.J.P. When questioned by the Government, Padilla-Maldonado stated that Turcios was no longer using that phone and thus she was unsure whether the call data was retrievable. Padilla-Maldonado also testified that the phone data had been wiped.

Third, the IJ questioned why Petrona, who lived with Padilla-Maldonado during the abuse and who knew Pablo for many years, did not submit an affidavit or testify before the IJ regarding the abuse. At first, Padilla-Maldonado explained that Petrona had been kidnapped by the Zeta cartel in Mexico, but then revealed that Petrona had been

8

released after her family paid ransom, and was living close to Padilla-Maldonado at the time.

Padilla-Maldonado did submit her medical record from her August 24, 2015 visit with a doctor, who noted Padilla-Maldonado's bruises from her "life partner," and observed that Padilla-Maldonado was in a "state of panic, anxiety and depression" and appeared to be having a "nervous breakdown." A. 98. Padilla-Maldonado also submitted an affidavit from her cousin Wendy Morales, whose statement the IJ found "generally coincide[d] with [Padilla-Maldonado's] statements," A. 29; as well as several reports describing violence against women in El Salvador.

The IJ also noted some minor inconsistencies in Padilla-Maldonado's testimony, including allegations of Pablo's gang involvement,[3] and the fact that Padilla-Maldonado did not mention that after her August 24, 2015 visit to the medical clinic, she was instructed to obtain an x-ray on her hand. The IJ expected Padilla-Maldonado to provide further corroboration to explain these inconsistencies.

Ultimately, the IJ found that Turcios and Petrona were key witnesses who the IJ reasonably expected to corroborate Padilla-Maldonado's claims, and found Padilla-Maldonado's explanation for her failure to corroborate to be insufficient, as either witness could have submitted an affidavit in lieu of testifying. This, along with Padilla-Maldonado's failure to explain the inconsistencies in her statements, rendered her unable to meet her burden to prove her eligibility for asylum or withholding.

---

[3] The IJ stated that Padilla-Maldonado's testimony, that she believed Pablo was a member of a gang based on what others told her, was inconsistent with her written statement that she knew of Pablo's gang membership from his gang symbols and tattoos.

9

The BIA affirmed the IJ's decision in its entirety, and wrote that it agreed that Padilla-Maldonado did not "adequately explain the absence of reasonably available evidence concerning material elements of her claim." A. 7.

We agree that it was reasonable for the IJ to expect Padilla-Maldonado to corroborate her claims with testimony or affidavits from Petrona and Turcios, when it appears realistic based on their proximity to Padilla-Maldonado in the United States, and because they were contemporaneously aware of Pablo's abuse. We also note that the IJ provided Padilla-Maldonado with an opportunity to explain her failure to produce these witness statements and performed the three-step corroboration analysis required by *Abdulai,* 239 F.3d at 554. However, it is not apparent from the record that the IJ gave Padilla-Maldonado adequate notice of what corroboration would be expected of her and that she would fail to meet her burden absent this corroboration.

Our precedent counsels against faulting Padilla-Maldonado for not anticipating the IJ's requirement for corroboration, absent notice. For example, in *Toure v. Attorney General*, the IJ "identified the corroborative evidence that she expected and why she expected it." 443 F.3d 310, 324 (3d Cir. 2006). However, "[i]t was not until the oral decision that the IJ indicated that she expected such evidence." *Id.* Nor did the IJ give the petitioner "the opportunity . . . to seek supporting evidence from his relatives in Cote d'Ivoire. . . . Accordingly, [the petitioner] was not provided with notice and an opportunity to present an explanation."[4] *Id.* Moreover, our recent opinion in *Saravia v.*

---

[4] Although Padilla-Maldonado was given the opportunity to explain why she did not have corroborating evidence from Petrona and Turcios, in *Toure*, the petitioner was neither

*Attorney General*, 2018 WL 4688710 (3d Cir. 2018), makes clear that *Chukwu* is controlling regarding these aspects of corroboration.

Similarly, we find that in light of Padilla-Maldonado's testimony which she supplemented with other corroborating evidence, such as her medical report indicating abuse-related injuries, and the IJ's failure to notify Padilla-Maldonado that testimony or affidavits from Petrona and Turcios would be critical to meeting her evidentiary burden, Padilla-Maldonado was not given adequate notice and an opportunity to produce this evidence. If Padilla-Maldonado had been told that a written statement or affidavit would suffice, given the opportunity, she might have been able to procure them from Petrona and Turcios. If given this opportunity on remand, and after such notice, she fails to produce this evidence or provide a reasonable explanation for why, a denial of her claims for failure to corroborate may be appropriate.

Thus, we will vacate and remand to the BIA to remand to the IJ for further proceedings in connection with Padilla-Maldonado's application for asylum and withholding of removal, consistent with this opinion. However, given Padilla-Maldonado's failure to demonstrate that she was likely to be subjected to torture from, or at the acquiescence of, the Salvadoran government, we find that the IJ appropriately denied her CAT relief, and that the BIA's decision affirming the IJ's findings is supported by substantial evidence.

---

given advance notice nor provided the opportunity at the hearing to explain. Both aspects are important under our precedent. *Toure*, 443 F.3d at 324.

## V. Particular Social Group Analysis

In *Matter of A-R-C-G-*, the BIA had determined that the particular social group of "married women in Guatemala who are unable to leave their relationship" was cognizable for an asylum claim. I & N Dec. 388 (BIA 2014). The Government has brought to our attention *Matter of A-B-*, 27 I & N Dec. 316, 317 (A.G. 2018), in which the Attorney General overruled *Matter of A-R-C-G-* and determined that the BIA erred in its analysis that determined the particular social group to be cognizable. The Attorney General concluded that this definition was too expansive. *Matter of A-B-*, 27 I & N Dec. at 319.

The IJ in this case found that Padilla-Maldonado's particular social group, "Salvadoran women in domestic relationships who are unable to leave," paralleled the proposed social group in *A-R-C-G-*, thus finding it to be cognizable. While the overruling of *A-R-C-G-* weakens Padilla-Maldonado's case, it does not automatically defeat her claim that she is a member of a cognizable particular social group. As we remand to the BIA to remand to the IJ, the IJ should determine whether Padilla-Maldonado's membership in the group of "Salvadoran women in domestic relationships who are unable to leave" is cognizable according to the parameters of *A-B-*, 27 I & N Dec. at 320.[5]

---

[5] We will not here attempt to describe all of the Attorney General's directives in *A-B-*, but note that the memorandum indicates that Padilla-Maldonado must demonstrate:

> (1) membership in a particular group, which is composed of members who share a common immutable characteristic, is defined with particularity, and is socially distinct within the society in question; (2) that her membership in that group is a central reason for her persecution; and (3) that the alleged harm is inflicted by the government of her home country or by persons that

**VI. Conclusion**

We will deny the petition in part as to Padilla-Maldonado's CAT claim, grant the petition in part and remand to the BIA for it to remand to the IJ as to her asylum and withholding claims.

---

the government is unwilling or unable to control. Furthermore, when the applicant is the victim of private criminal activity, the analysis must also consider whether government protection is available, internal relocation is possible, and persecution exists countrywide.
27 I & N Dec. at 320 (internal citations and quotation marks omitted).