NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3514
_____

ELIANE NUNES-DE ARAUJO MATOS; J. D. A-M.,
Petitioners,

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
Respondent
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(Agency Nos. A208-541-458, A208-541-459)
Immigration Judge: John B. Carle
_____

Argued September 18, 2019

Before: KRAUSE, MATEY, *Circuit Judges*,
and QUIÑONES ALEJANDRO,* *District Judge*

(Opinion filed: October 22, 2019)

William C. Menard [ARGUED]
Norris McLaughlin
515 West Hamilton Street
Suite 502
Allentown, PA 18101
        *Counsel for Petitioners*

William Barr, Attorney General United States of America
Lance L. Jolley [ARGUED]

_____

        * Honorable Nitza I. Quiñones Alejandro, District Judge, United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

Abigail E. Leach
Anthony C. Payne
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Counsel for Respondent*

_____

OPINION[†]

_____

MATEY, *Circuit Judge.*

Petitioner Eliane Nunes-De Araujo Matos and her daughter are citizens of Brazil applying for asylum to escape the violence of domestic abuse. Although the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") recognized the harms suffered by Matos and the threat to her daughter's safety, the applications were denied. But the agency's fact finding is unsupported by substantial evidence, and its decision cannot be supported by the given reasoning. As a result, we vacate and remand.

## I. BACKGROUND

In October 2015, Matos and her daughter received notice that they were removable from the United States. They conceded they entered the United States without authorization and applied for asylum, claiming persecution by Matos's boyfriend.[1] An IJ conducted a hearing on that application, and Matos appeared as the sole witness. Matos

---

[†] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Matos and her daughter also applied for withholding of removal and for protection under the Convention Against Torture. The IJ and the BIA denied both applications, but neither is before this Court.

described first dating her boyfriend as a teenager before marrying another man. After Matos separated from her husband, she resumed her relationship with her boyfriend, and both she and her daughter began living with him.

The relationship turned abusive. Her boyfriend often returned home appearing "very strange," demanding intercourse with Matos and threatening to rape her daughter if Matos did not submit. (*Id.* at 106–110.) Matos did not report the sexual abuse to the police fearing that it would put her daughter "out on the street." (*Id.* at 118–19.) And Matos concluded that if she left to live elsewhere "he would come after me anyway," because "[h]e's a psychopath." (*Id.* at 152.)

Around the time these sexual assaults began, Matos began to suspect her boyfriend's involvement in drug and firearms trafficking. So to end the abuse, she reported her suspicions to the police. Authorities arrested him immediately. Soon after, however, Matos "started hearing that they were going to let him out," and she became "very afraid." (*Id.* at 124.) Through her boyfriend's associates, Matos learned that her boyfriend suspected her role in his arrest and that he intended to exact revenge. With the financial assistance of her parents, she attempted to enter the United States but was arrested, leading to the proceedings in this appeal.

## II. PROCEDURAL HISTORY

To succeed on her asylum application, Matos had to show she was unable or unwilling to return to Brazil because she faced "persecution . . . on account of [her] . . . membership in a particular social group." *See* 8 U.S.C. § 1158(b)(1)(A); *id.* § 1101(a)(42)(A). The IJ first determined that Matos "testified credibly and that her

3

testimony [was] entitled to full evidentiary weight." (A.R. at 61.) The IJ then found that

"[t]he sexual assaults [Matos] endured, [and] the emotional upset caused by [her

boyfriend's] threats against her teen daughter [were] experiences in Brazil that rise to the

level of persecution" for asylum purposes. (A.R. at 62.) The IJ also found that the

"particular social group" proposed by Matos—i.e., "Brazilian women in domestic

relationships, who cannot leave the relationship"—was cognizable under relevant

precedent. (*Id.* at 66.) The IJ ultimately denied Matos's application, however, for two

reasons. First, the IJ found that Matos was not a member of her proposed social group

because she was, in fact, able to leave her abuser. And second, the IJ found that, even if

Matos were a member of the group, her boyfriend wanted revenge because she reported

him to the police, not because she was stuck in her relationship.[2] The BIA agreed with

those conclusions and affirmed.

### III. ANALYSIS

We have jurisdiction under 8 U.S.C. § 1252(a), but may affirm the agency's

decision only upon the reasons given by the agency itself. *See Radiowala v. Attorney

Gen. U.S.*, 930 F.3d 577, 581 (3d Cir. 2019). We uphold the agency's findings of fact if

"they are supported by reasonable, substantial, and probative evidence in the record

considered as a whole." *S.E.R.L. v. Attorney Gen.*, 894 F.3d 535, 543 (3d Cir. 2018). In

other words, we treat the agency's fact-finding as "conclusive unless any reasonable

---

[2] Because he denied Matos's application on these grounds, the IJ made no finding on whether the Brazilian government was unable or unwilling to control her boyfriend's abusive behavior. *See Valdiviezo-Galdamez v. Attorney Gen.*, 502 F.3d 285, 288 (3d Cir. 2007).

adjudicator would be compelled to conclude [to] the contrary." *Radiowala*, 930 F.3d at 581. Because the BIA affirmed "the IJ's decision for the reasons set forth in that decision," we review the IJ's decision. *Fiadjoe v. Attorney Gen.*, 411 F.3d 135, 152 (3d Cir. 2005).

### A.  The Record Compels a Finding That Matos Could Not Leave Her Abusive Relationship

The IJ found that Matos was able leave her abusive boyfriend. That conclusion is unsupportable, for three reasons.

First, the IJ noted that Matos ended her prior teenage romance. But a woman's ability to leave a previous, non-abusive relationship is irrelevant in evaluating her ability to leave a later, abusive one, and the IJ's consideration of Matos's ability to end her teenage romance acknowledges no distinction between a typical relationship and a relationship fraught with domestic abuse.

Second, the IJ reasoned that Matos could leave by reporting her boyfriend to the police. But to have the authorities remove her abuser—temporarily, at that—hardly shows Matos's ability to leave the relationship. The IJ also found that Matos "believe[d] if [he] was jailed, he would only be jailed for a short period of time and then, upon his release he would be targeting her again." (A.R. at 67.) And no authority supports defining "unable to leave" to exclude women who fortuitously suspect their abuser is involved in additional criminal activity.

Third, the IJ found "no testimony" showing Matos and her daughter risked danger if they left. (*Id.* at 68.) That conclusion is inconsistent with the IJ's conclusion that Matos

5

"thought about leaving, but she assumed because he was a dangerous criminal, that he would find her." (*Id.* at 59.) It is also inconsistent with Matos's own testimony that, throughout the abuse, her boyfriend carried a gun; that the "same thing would still happen" if she left him because he was a "psychopath" who would "come after" her; that "he would hunt [her] down any place [she] was in Brazil"; that "[n]o place there is safe for [her] and [her daughter]"; and that he would rape her daughter if she reported the abuse. (A.R. at 116–17, 120, 128, 143, 152.)

In sum, the record compels the conclusion that Matos could not leave her relationship. The agency's finding to the contrary, therefore, cannot be affirmed.

### B. The Record Compels a Finding that Matos's Feared Future Persecution Would Be "On Account Of" Her Inability to Leave the Relationship

The IJ also found that, even if Matos were a member of her proposed social group, her boyfriend wanted revenge because she reported him to the police, not because she was stuck in her relationship. That conclusion is also unsupportable, as it fails to account for the continuity in an abusive relationship between abuse directed at a victim because she could not leave the relationship, and retaliation against a victim for trying to even temporarily sever that relationship. Because that logical link cannot be ignored, the record compels the conclusion that Matos's feared future persecution would be "on account of" her inability to leave the relationship. The agency's finding to the contrary, therefore, cannot be affirmed.[3]

---

[3] When finding that "Brazilian women in domestic relationships, who cannot leave the relationship" was cognizable for asylum purposes, the IJ relied heavily on the BIA's

**C. The IJ and the BIA Committed Legal Error in Failing to Properly Analyze Matos's Past Persecution**

Along with these two erroneous fact findings, the IJ's opinion also contained legal error. An applicant "may qualify [for asylum] either because . . . she has suffered past persecution or because . . . she has a well-founded fear of future persecution." 8 C.F.R. § 1208.13(b). If an applicant establishes past persecution, she "shall also be presumed to have a well-founded fear of persecution on the basis of the original claim." *Id.* § 1208.13(b)(1). The Government can rebut that presumption, however, by showing, by a preponderance of the evidence, either that

> (A) [t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution . . . ; [or]
>
> (B) [t]he applicant could avoid future persecution by relocating to another part of the applicant's country[,] . . . and under all the circumstances, it would be reasonable to expect the applicant to do so.

*Id.* § 1208.13(b)(1)(i)(A), (B).

Here, the IJ and the BIA explicitly found that the abuse suffered by Matos qualified as past persecution, and the IJ recognized that, to trigger the rebuttable presumption, there must also be a finding that the past persecution must be "on account of" membership in the particular social group. But instead of assuming that nexus and

---

decision in *Matter of A-R-C-G-*, 26 I. & N. Dec. 388 (B.I.A. 2014). The Attorney General recently overruled that decision in *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018).

    The Government did not appeal the IJ's cognizability finding. Our conclusion that Matos has shown a nexus between the threatened future persecution, on one hand, and her status as a Brazilian woman unable to leave her relationship, on the other, was therefore made in the context of that undisturbed finding. We leave it to the agency to decide whether, or how, to apply *A-B-* on remand.

applying the presumption, or assessing whether Matos's membership in her proposed social group motivated this *past* persecution, the IJ abruptly shifted gears and analyzed the nexus between the membership and the feared *future* persecution.

In doing so, the IJ committed legal error. "The absence of reasoned discussion of past persecution undercuts any meaningful review of the [agency's] fear of future persecution finding, because we do not know whether [the applicant] should have had the benefit of the regulatory presumption of fear of persecution based on prior events." *El Moraghy v. Ashcroft*, 331 F.3d 195, 204–05 (1st Cir. 2003); *cf. Ghebrehiwot v. Attorney Gen.*, 467 F.3d 344, 355 (3d Cir. 2006) (remanding the case when the BIA "focused on the absence of evidence of past persecution" and did not consider whether the applicant could "demonstrate an objective basis for a well-founded fear of future . . . persecution"). It also has the effect of reversing the burden of proof since, with past persecution established, the next question should have been whether the government satisfied its burden of rebutting the presumption of a well-founded fear of future persecution.

## IV. CONCLUSION

Because we cannot uphold the agency's fact finding, and because the agency's reasoning contained legal error, we will grant the petition for review, vacate the BIA's order, and remand.