# Matter of A-B-, Respondent

*Decided by Attorney General June 16, 2021*

U.S. Department of Justice
Office of the Attorney General

(1) *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018) ("*A-B- I*"), and *Matter of A-B-*, 28 I&N Dec. 199 (A.G. 2021) ("*A-B- II*"), are vacated in their entirety.

(2) Immigration judges and the Board should no longer follow *A-B- I* or *A-B- II* when adjudicating pending or future cases. Instead, pending forthcoming rulemaking, immigration judges and the Board should follow pre-*A-B- I* precedent, including *Matter of A-R-C-G-*, 26 I&N Dec. 388 (BIA 2014).

## BEFORE THE ATTORNEY GENERAL

Pursuant to 8 C.F.R. § 1003.1(h)(1)(i), I direct the Board of Immigration Appeals ("Board") to refer this case to me for my review. With the case thus referred, I hereby vacate *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018) ("*A-B- I*"), and *Matter of A-B-*, 28 I&N Dec. 199 (A.G. 2021) ("*A-B- II*").

Under the Immigration and Nationality Act ("INA"), the Attorney General may grant asylum to individuals who meet several statutory requirements, including that they have suffered or fear (1) "persecution," (2) "on account of," (3) their "race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); *see* INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A). [1] Persecution is inflicted "on account of" a protected characteristic if that characteristic is "at least one central reason" for the persecution. INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i); *see Matter of W-G-R-*, 26 I&N Dec. 208, 223–24 (BIA 2014). The Board has long held that harm may qualify as "persecution" if it is inflicted either by a government or by non-governmental actors that the relevant government is "unable or unwilling to control." *Matter of Acosta*, 19 I&N Dec. 211, 222 (BIA 1985).

In *A-B- I*, Attorney General Sessions reviewed an unpublished decision of the Board concerning the asylum eligibility of an applicant claiming persecution based on her membership in a particular social group of "'El Salvadoran women who are unable to leave their domestic relationships where they have children in common' with their partners." 27 I&N Dec.

---

[1] The "membership in a particular social group" standard also appears in the statutory provision that governs withholding of removal. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3).

at 321. The Board had found that this group was substantially similar to "'married women in Guatemala who are unable to leave their relationship,'" which the Board had recognized as a particular social group in *Matter of A-R-C-G-*, 26 I&N Dec. 388 (BIA 2014). *A-B- I*, 27 I&N Dec. at 321 (quoting *A-R-C-G-*, 26 I&N Dec. at 390). In *A-B- I*, Attorney General Sessions overruled *A-R-C-G-*. *Id.* at 346. Having done so, he vacated the Board's decision and remanded the case to the immigration judge. *Id.* In *A-B- II*, Acting Attorney General Rosen reviewed a subsequent Board decision in the same case "to provide additional guidance" on recurring issues in asylum cases involving "applicants who claim persecution by non-governmental actors on account of the applicant's membership in a particular social group." *A-B- II*, 28 I&N Dec. at 200.

The President recently issued an executive order directing the Attorney General and the Secretary of Homeland Security to promulgate regulations "addressing the circumstances in which a person should be considered a member of a 'particular social group.'" Exec. Order No. 14010, § 4(c)(ii), 86 Fed. Reg. 8267, 8271 (Feb. 2, 2021). Rulemaking enables "thorough consideration of the issues involved" in complex questions of immigration law. *Matter of Compean*, 25 I&N Dec. 1, 2 (A.G. 2009). Among other things, it "affords all interested parties a full and fair opportunity to participate and ensures that the relevant facts and analysis are collected and evaluated." *Id.* at 2. My predecessors thus sometimes have vacated Attorney General or Board opinions in light of pending or future rulemakings. *Id.*; *see Matter of R-A-*, 22 I&N Dec. 906, 906 (BIA 1999, A.G. 2001).[2]

I have concluded that the same approach is warranted here, and I vacate *A-B- I* and *A-B- II* to leave open the questions that those opinions sought to resolve and to ensure that the Departments have appropriate flexibility in the forthcoming rulemaking. *A-B- I* attempted to set forth a comprehensive statement of the requirements that must be met to establish that an applicant has suffered persecution on account of membership in a particular social group—the very questions that the recent Executive Order directs the Department of Justice and the Department of Homeland Security to address in the rulemaking. Portions of the discussion in *A-B- I* were framed as a restatement and application of existing Board precedent. But the opinion begins with a broad statement that "victims of private criminal activity" will not qualify for asylum except perhaps in "exceptional circumstances."

---

[2] Of course, agencies also have discretion to "announc[e] new principles in an adjudicative proceeding" rather than a rulemaking. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974). This ability to set policy in a case-by-case fashion allows an agency to "'develop[]'" principles over time as it gains "'experience with a particular problem,'" and also for the agency to "'adjust[]'" those principles "'to meet particular, unforeseeable situations.'" *Id.* at 293 (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 202 (1947)).

27 I&N Dec. at 317; *see also, e.g.*, *id.* at 320 ("Generally, claims by aliens pertaining to domestic violence or gang violence perpetrated by non-governmental actors will not qualify for asylum."). That broad language could be read to create a strong presumption against asylum claims based on private conduct. As a result, *A-B- I* threatens to create confusion and discourage careful case-by-case adjudication of asylum claims. *See, e.g.*, *Orellana v. Att'y Gen.*, 806 F. App'x 119, 126 (3d Cir. 2020) (noting that "the BIA seemed to lump [the asylum seeker]—almost automatically—into a generic group of 'victims of gang violence' under the Attorney General's recent guidance in *Matter of A-B-* [*I*]"); *Matter of M-G-M-*, slip op. at *2 (BIA Feb. 13, 2019) ("In *Matter of A-B-*, the Attorney General held that in general a claim by an alien pertaining to domestic violence perpetrated by a non-governmental actor will not qualify for asylum."); *Matter of O-E-R-C-*, slip op. at *1 (BIA Aug. 22, 2018) (stating without qualification that *Matter of A-B-* "declined to extend asylum and withholding of removal relief to victims of private criminal activity").

Additionally, other portions of *A-B- I* have spawned confusion among courts. For example, the courts of appeals have disagreed about whether *A-B- I* changed the "unable or unwilling" standard the Board has long applied to determine whether private violence qualifies as persecution. *Compare Grace v. Barr*, 965 F.3d 883, 898–900 (D.C. Cir. 2020) (concluding that *A-B- I* adopted a "new, more demanding standard" without acknowledging or explaining the change), *with, e.g.*, *Scarlett v. Barr*, 957 F.3d 316, 332–33 (2d Cir. 2020) (finding that *A-B- I* retained the "unwilling or unable" standard); *Gonzales-Veliz v. Barr*, 938 F.3d 219, 232–34 (5th Cir. 2019) (same).

*A-B- II* attempted to clarify some of the issues raised by *A-B- I*, including whether *A-B- I* had changed the "unable or unwilling" standard, the proper application of that standard, and the meaning of the statutory "one central reason" test. *A-B- II*, 28 I&N Dec. at 200. But *A-B- II* sought to resolve those complex and important questions without the benefit of additional briefing or other public input. Because that process did not "result[] in a thorough consideration of the issues involved," *Compean*, 25 I&N Dec. at 2, I have concluded that the issues should instead be left to the forthcoming rulemaking, where they can be resolved with the benefit of a full record and public comment.

For these reasons, I conclude that the decisions in *A-B- I* and *A-B- II* should be vacated in their entirety. Accordingly, immigration judges and the Board should no longer follow *A-B- I* or *A-B- II* when adjudicating pending or future cases. Instead, pending rulemaking, immigration judges and the Board should follow pre-*A-B- I* precedent, including *Matter of A-R-C-G-*.