**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 11, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

EMMA ROSA AMAYA JIMENEZ; JANE
DOE, a minor child,

     Petitioners,

v.

WILLIAM P. BARR, United States
Attorney General,

     Respondent.

Nos. 17-9548 & 18-9541
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Petitioners are a mother and her minor daughter from Honduras who

unsuccessfully sought asylum, withholding of removal, and protection under the

Convention Against Torture (CAT) on domestic violence grounds. Their petition for

review challenges (1) the September 28, 2017, Board of Immigration Appeals (BIA)

decision dismissing the appeal of the denial of their claims for asylum and

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

withholding of removal; and (2) the May 31, 2018, BIA decision denying their motion to reopen their removal proceeding based on ineffective assistance of counsel. Petitioners have also filed a motion to remand to the BIA. Exercising jurisdiction under 8 U.S.C. § 1252, we deny the petition for review, as well as the motion to remand.

## I. Background

Petitioner Jane Doe is the minor daughter of Petitioner Emma Rosa Amaya Jimenez. She is now six years old, and her mother is thirty-four years old. Natives and citizens of Honduras, they entered the United States illegally via Texas on December 13, 2014. The Department of Homeland Security initiated removal proceedings against them by serving them with a Notice to Appear (NTA) alleging they were present in the United States without being admitted or paroled after inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Petitioners conceded removability before the immigration court but applied for asylum, withholding of removal, and protection under the CAT. Jane Doe is a derivative beneficiary on her mother's application for asylum, *see id.* § 1158(b)(3), but she filed her own I-589 application for withholding of removal and protection under the CAT.

The Immigration Judge (IJ) held a hearing on Petitioners' applications in October 2016. Ms. Amaya Jimenez testified. The crux of her testimony was that she was in a physically and emotionally abusive relationship with a man named Oscar Alirio Hernandez for about two years. She received such a severe beating during her pregnancy that she had to go to the hospital. Mr. Hernandez is Jane Doe's father, but

2

his name is not on Jane Doe's birth certificate because he did not want her to "carry his name." Pet'rs' App. at 150. Mr. Hernandez regularly hit her, Jane Doe, and her two older children, who ultimately moved in with her brother. She contacted an attorney for help through her sister and also filed a police report against Mr. Hernandez, but both avenues only led to further violence. Ultimately, she fled with Jane Doe to the United States, leaving her other children behind with her brother.

On cross-examination, Ms. Amaya Jimenez could not explain numerous discrepancies in the police report. She acknowledged that the attorney she contacted for help is also the father of her oldest daughter. She further acknowledged that when she got to the United States, she told immigration officials she was going to Colorado to live with a man named Carlos Villatoro, who was her "partner" and Jane Doe's father. *Id.* at 159-60. She explained that a relative met Mr. Villatoro online and he agreed to help Petitioners, so they lived with him for about a year. She stated that she did not tell immigration officials she was afraid of returning to Honduras because "they didn't ask." *Id.* at 160. She periodically referred to Mr. Hernandez as her "ex-husband," *see, e.g.*, *id.* at 156, but denied being legally married to him.

A licensed clinical social worker also testified at the hearing. The social worker met with Ms. Amaya Jimenez twice to conduct a clinical interview and a mental health status examination, but she did not review any written documentation. The social worker concluded that Ms. Amaya Jimenez suffered from post-traumatic stress disorder and major depression. She found Ms. Amaya Jimenez's account to be

3

credible, but indicated that her assessment would have been different had she known about the statements at the border regarding Mr. Villatoro.

The IJ issued a detailed written decision denying Petitioners' requests for relief and ordering their removal to Honduras. The IJ found that Petitioners presented insufficient corroborating evidence to prove eligibility for asylum. The IJ highlighted several evidentiary deficiencies that "created substantial concerns" for her. Pet'rs' App. at 11. For example, the police report submitted during the hearing has internal discrepancies with respect to the date of the incident and Jane Doe's age and is also inconsistent with Ms. Amaya Jimenez's testimony. Moreover, only one document in the record—that questionable police report—even contains Mr. Hernandez's name. Mr. Hernandez is not listed as the father on Jane Doe's birth certificate, and Ms. Amaya Jimenez identified Mr. Villatoro as Jane Doe's father when she spoke to border agents. Furthermore, Ms. Amaya Jimenez was not forthcoming about her familial or previous romantic relationship with some of the people who submitted affidavits to support her application. Consequently, the IJ expressed "serious questions about the harm [Ms. Amaya Jimenez] alleged she endured at the hands of [Mr. Hernandez]" and even questioned whether he "truly exists." *Id.* at 10. The IJ also considered the above-listed factors, together with inconsistencies in the timeline of events, to be "serious indicators of adverse credibility" when considered collectively. *Id.* at 13. As a derivative beneficiary on her mother's unsuccessful application, Jane Doe was not entitled to asylum either.

4

Because Ms. Amaya Jimenez could not meet the lesser burden of proof to establish eligibility for asylum, the IJ determined she is necessarily ineligible for withholding of removal, which has a higher burden of proof. The IJ also deemed Ms. Amaya Jimenez to be ineligible for protection under the CAT due to her failure to present credible evidence that she will be tortured upon return to Honduras. Having "advance[d] the same basis for a claim of relief" in her I-589 application as her mother, *id.* at 13 n.1, Jane Doe was similarly ineligible for both types of relief.

Petitioners appealed the denial of asylum and withholding of removal to the BIA.[1] A single member of the BIA affirmed the IJ's decision and dismissed the appeal on September 28, 2017. The BIA noted the IJ's adverse credibility determination and the IJ's conclusion that, "even assuming that [Ms. Amaya Jimenez's] testimony was credible," she had not met her burden of proof for her asylum claim because (1) she did not submit sufficient corroborating evidence and (2) the evidence she submitted contained discrepancies and inconsistencies. *Id.* at 102. The BIA then summarized the hearing testimony and the IJ's decision in detail. Ultimately, the BIA agreed with the IJ's reasoning and upheld the denial of relief.

On October 26, 2017, Petitioners filed a timely petition for review with this court. On December 26, 2017, they filed a motion to reopen their removal proceedings based on ineffective assistance of counsel. They argued that the attorney

_____

[1] The BIA noted that Petitioners' notice of appeal "cursorily expressed disagreement" with the IJ's ruling that they were not entitled to protection under the CAT. Pet'rs' App. at 16 n.2. But it deemed that matter waived because the brief did not "provide[] any meaningful challenge" to the ruling. *Id.*

5

who represented them before the IJ and the BIA did not thoroughly review the evidence and the translations thereof, conduct appropriate due diligence, or "tailor[ the evidence] to their specific factual scenario in any way." *Id.* at 26. These failures, they said, prejudiced them and denied them a fundamentally fair proceeding. On May 31, 2018, the BIA denied the motion to reopen.

Petitioners now petition for review of both BIA decisions. They also move for a remand to the BIA to brief two recent legal developments.

## II. Analysis

### A. Motion to Remand

Because it implicates the agency's jurisdiction, we turn first to Ms. Amaya Jimenez's motion to remand to the BIA to allow her to (1) add a jurisdictional argument based on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018);[2] and (2) rebrief whether she and her daughter are part of a particular social group given the Attorney General's opinion in *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), which vacates the decision she relied upon to support her asylum claim, *Matter of A-R-C-G*, 26 I. & N. Dec. 388 (BIA 2014).[3] Ms. Amaya Jimenez contends that both issues will be "determinative" of this appeal, Mot. to Remand at 8, but that is not the case.

---

[2] Petitioners make a similar argument to this court in the jurisdictional section of their opening brief.

[3] Ms. Amaya Jimenez could not raise these arguments in a motion to reconsider before the BIA because the deadline to file a motion to reconsider is thirty days after the BIA's removal order; both *Matter of A-B-* and *Pereira* were issued after that date.

6

This court recently rejected the *Pereira*-based jurisdictional argument in *Lopez-Munoz v. Barr*, 941 F.3d 1013, 1017-18 (10th Cir. 2019). In *Pereira*, the Supreme Court held that an NTA that does not specify the time and date at which removal proceedings will be held is not "a notice to appear" under 8 U.S.C. § 1229(a) and does not trigger the stop-time rule in 8 U.S.C. § 1229b for purposes of cancellation of removal. 138 S. Ct. at 2113-14. Ms. Amaya Jimenez seeks to extend the holding in *Pereira* beyond the context of the stop-time rule. She argues that because her NTA was legally defective under the applicable regulations (8 C.F.R. §§ 1003.13, 1003.14(a)) and statute (8 U.S.C. § 1229(a)), the IJ lacked jurisdiction over her removal proceeding. This court squarely rejected this theory in *Lopez-Munoz*, joining the growing number of circuit courts that have "declin[ed] to read *Pereira* as an implicit pronouncement on an immigration judge's jurisdiction." 941 F.3d at 1018.

It would be similarly unproductive for Petitioners to rebrief whether they are part of a particular social group—women in Honduras unable to leave a relationship—given recent changes in the law. The Attorney General stated in *Matter of A-B-* that "[g]enerally, claims by aliens pertaining to domestic violence . . . perpetrated by non-governmental actors will not qualify for asylum." 27 I. & N. Dec. at 320. This decision thus makes it much *harder* for women alleging domestic abuse to obtain asylum on that ground. In any event, neither the IJ nor the BIA based its ruling on membership in a particular social group; the determinative factor was Ms. Amaya Jimenez's lack of credibility and failure to meet her burden of proof.

7

Furthermore, the government did not rely up *Matter of A-B-* in its briefing on appeal, and it does not factor into this court's ruling either.

For these reasons, we deny the motion to remand.

**B.     Petition for Review**

This case involves a single BIA member's brief order under 8 C.F.R. § 1003.1(e)(5). We review that order as the final agency determination, limiting our review to the issues specifically addressed therein. *Diallo v. Gonzales*, 447 F.3d 1274, 1278-79 (10th Cir. 2006). We may, however, consult the IJ's decision "to give substance to the BIA's reasoning." *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009). For instance, because the BIA incorporated the IJ's rationale by reference and repeated a condensed version of the IJ's reasoning, we may consult the IJ's "more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

We review the BIA's legal conclusions de novo. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). We review the BIA's findings of fact—including its credibility determinations—under the substantial evidence standard: "Under that test, our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Id.* "[T]he BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012) (internal quotation marks omitted). The

8

substantial evidence standard is "highly deferential." *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004).

### 1. Adverse Credibility Determination

Petitioners contend on appeal that the BIA erred as a matter of law by not conducting a meaningful review of the adverse credibility determination. However, the BIA referenced the IJ's determination that Ms. Amaya Jimenez's testimony was not credible and noted that the IJ was in the best position to assess her credibility. The BIA then discussed a number of ways in which her testimony was unsubstantiated or conflicted with the evidence, repeating a condensed version of the IJ's reasoning. The BIA's analysis constitutes a meaningful review of the IJ's credibility determination.

Petitioners further contend that "no reasonable adjudicator could have reached the conclusion that [Ms. Amaya Jimenez] was not credible." Opening Br. at 24. They effectively ask us to second-guess the adverse credibility determination. "We may not weigh the evidence, and we will not question the immigration judge's or BIA's credibility determinations as long as they are substantially reasonable." *Woldemeskel v. INS*, 257 F.3d 1185, 1192 (10th Cir. 2001). Here, the IJ considered the totality of the circumstances and the relevant factors outlined in 8 U.S.C. § 1158(b)(1)(B)(iii) and supported the adverse credibility determination with reasonable, substantial, and probative evidence. The IJ also documented a number of inconsistencies and discrepancies between Ms. Amaya Jimenez's testimony and the evidence, as required. *See Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004)

9

("Because an alien's testimony alone may support an application for withholding of removal or asylum, the IJ must give specific, cogent reasons for disbelieving it." (citation and internal quotation marks omitted)). The BIA referred back to the IJ's detailed analysis. The agency's credibility determination was substantially reasonable.

Petitioners also advance a few more specific attacks on the adverse credibility determination, which likewise lack merit. For instance, Petitioners take issue with the IJ's reference to the statement Ms. Amaya Jimenez made to border agents regarding her intent to reside with Mr. Villatoro and his paternity of Jane Doe. They claim the IJ "relied on this border statement to call into question the veracity of the entire case," in contravention of *Uanreroro*. Opening Br. at 32. It is true, as Petitioners state, "that lying in an attempt to enter the United States does not *on its own* provide substantial evidence to support an adverse credibility determination" under *Uanreroro*. *Id.* at 30 (emphasis added). But the IJ did not run afoul of *Unanreroro* because the border statement here was only a *factor* in the credibility determination, which is permissible. *See Uanreroro*, 443 F.3d at 1211. Petitioners also place the blame on their former counsel. But as explained *infra* in connection with their motion to reopen, the BIA concluded that Petitioners did not show that the outcome of the case would have been different but for former counsel's ineffective performance and indeed that former counsel's performance was not even deficient.

We discern no error with respect to the agency's adverse credibility determination.

10

### 2. Insufficient Corroborating Documentation

Petitioners next argue that the BIA erred in finding that Ms. Amaya Jimenez did not provide sufficient corroborating documentation for her asylum claim. It is not necessary for us to reach this argument because we have upheld the alternative ground for the BIA's asylum determination: Ms. Amaya Jimenez's lack of credibility. But we note that the BIA pinpointed numerous evidentiary deficiencies relating to the police report, Mr. Hernandez's paternity of Jane Doe, the abuse inflicted by Mr. Hernandez, and the court filing against Mr. Hernandez. The BIA also highlighted the lack of supporting evidence from Mr. Villatoro and from Ms. Amaya Jimenez's sister, as well as Petitioners' failure to disclose familial relationships with the individuals who did provide evidence. And within its analysis, the BIA referenced the IJ's detailed decision extensively. Accordingly, substantial evidence also supports the BIA's finding as to insufficient corroborating evidence.

### 3. Jane Doe's Independent Claims

Petitioners present a cursory, undeveloped argument that the BIA erred in failing to consider Jane Doe's independent claims for asylum, withholding of removal, and protection under the CAT. We reject this argument.

Jane Doe's asylum claim fails because she is a derivative beneficiary on her mother's asylum application under 8 U.S.C. § 1158(b)(3), which was unsuccessful. The BIA correctly concluded that Petitioners had not presented a viable basis for an independent asylum claim for Jane Doe. But even if she had asserted an independent claim for asylum based on abuse inflicted by Mr. Hernandez, as Petitioners argue on

11

appeal, that claim would fail too. The only evidence presented to substantiate such abuse was the brief testimony of Ms. Amaya Jimenez, and we have upheld the agency's determination that she was not credible.

Jane Doe's claims for withholding of removal and protection under the CAT fail because Petitioners did not advance a separate appellate argument relating to these claims before the BIA. Any such arguments (which remain unknown) are administratively unexhausted, and we lack jurisdiction to consider them in the first instance. *See* 8 U.S.C. § 1252(d)(1); *see also Robles-Garcia v. Barr*, 944 F.3d 1280, 1283-84 (10th Cir. 2019).

### 4. Motion to Reopen

Finally, Petitioners argue that the BIA erred in denying Ms. Amaya Jimenez's motion to reopen based upon ineffective assistance of counsel. The BIA denied the motion on several grounds. First, Petitioners did not comply with the requirements of *Matter of Assaad*, 23 I. & N. Dec. 553 (BIA 2003), and *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988). Specifically, they did not file a complaint with the applicable state bar *before* filing the motion to reopen, and even after they purportedly filed one later, they did not include a copy in the update to the motion to reopen. Second, Petitioners did not show that the outcome of the case would have been different but for former counsel's ineffective performance. Last, former counsel's performance was not even deficient. "Rather, [Ms. Amaya Jimenez] herself contributed to many of the inconsistencies and discrepancies." Pet'rs' App. at 131.

12

"We review the BIA's decision on a motion to reopen only for an abuse of discretion." *Maatougui v. Holder*, 738 F.3d 1230, 1239 (10th Cir. 2013) (alterations, and internal quotation marks omitted). "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* (internal quotation marks omitted). "The BIA does not abuse its discretion when its rationale is clear, there is no departure from established policies, and its statements are a correct interpretation of the law, even when the BIA's decision is succinct." *Id.* (internal quotation marks omitted). "[M]otions to reopen immigration cases are plainly disfavored," and the moving party "bears a heavy burden to show the BIA abused its discretion." *Id.* (alterations and internal quotation marks omitted).

Petitioners' primary argument on appeal is that *Lozada* does not require a party alleging ineffective assistance of counsel to actually file a copy of the bar complaint with the BIA. According to Petitioners, the party alleging ineffective assistance need only indicate in the motion whether a disciplinary complaint has been filed and explain why not, if that is the case. But according to the BIA, documentary evidence of the complaint was necessary here to allow it "to review the complaint to ensure that it is not simply a pro forma filing, meritless, and/or involves collusion." Pet'rs' App. at 130. In finding Petitioners' submission to be deficient, the BIA cited *Matter of Rivera-Clavos*, 21 I. & N. Dec. 599 (BIA 1996), which expresses the BIA's

13

preference "to make final determinations of ineffective assistance of counsel claims on the documentary submissions alone, where possible." *Id.* at 604.

We need not decide what exactly *Lozada* requires under these circumstances. Even if we assume compliance with *Lozada*, Petitioners have not met their heavy burden of showing that the BIA abused its discretion. Petitioners argue that their former counsel prejudiced them by not thoroughly reviewing the evidence submitted to the court and the accompanying translations and by failing to conduct appropriate due diligence. The BIA carefully articulated why the record reveals otherwise.

### III. Conclusion

The court denies the petition for review of the BIA's final removal order, as well as the motion to remand. The court grants Petitioners' sealed motion for leave to proceed in forma pauperis. Since we have resolved the petition for review, prepayment of fees is no longer an issue. The relevant statute, 28 U.S.C. § 1915(a), does not permit litigants to avoid payment of fees; only prepayment of fees is excused. Accordingly, Petitioners are required to pay all fees to the Clerk of this Court.

Entered for the Court

Bobby R. Baldock
Circuit Judge

14