[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12618
Non-Argument Calendar
_____

Agency No. A202-086-560

MARIA FELICITA BAUTISTA-LOPEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(May 11, 2020)

Before BRANCH, LAGOA, and HULL, Circuit Judges.

PER CURIAM:

Maria Felicita Bautista-Lopez seeks review of a final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").  She argues that the BIA committed numerous errors in concluding she was not entitled to asylum or withholding of removal, which include (1) determining that the original social groups that she proposed to the IJ are not cognizable under the Immigration and Nationality Act ("INA"); (2) concluding she had not established that she is a member of each of those groups; and (3) affirming the IJ's conclusion that she had not established the El Salvadoran government was unable or unwilling to protect her.  She further argues that the BIA erred in failing to address her request that it consider whether the additional social groups that she proposed on appeal were cognizable or remand the case to the IJ to examine the issue.  Finally, she asserts that she is entitled to CAT relief, given her reasonable fear that she would be tortured if she returned to El Salvador and that the government would acquiesce in her torture.  After a review of the record, we deny the petition.

## I.    Background

Bautista-Lopez, a native and citizen of El Salvador, entered the United States without valid entry documents or inspection by an immigration officer on

September 1, 2014.  She was immediately detained and later participated in a credible fear interview regarding abuse by her former partner, Rolando Alonzo Vasquez ("Rolando").

An asylum officer served Bautista-Lopez with a notice to appear which charged that she was removable pursuant to INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an applicant for admission without a valid entry document.  She conceded removability as charged.  Bautista-Lopez filed an application for asylum and withholding of removal.  She also requested CAT relief.

At the merits hearing, Bautista-Lopez, with the assistance of a Spanish interpreter, testified to the following.  She feared to return to El Salvador because Rolando, a romantic partner with whom she had lived in El Salvador, threatened to kill her on numerous occasions.  She was severely beaten in January 2014, when Rolando slapped her several times, dunked her head in a sink full of water, and pushed her down the stairs, which caused her to fracture her ankle.  There were several incidents prior to that one in which Rolando beat her, slapped her, pulled her hair, and hit her with a closed fist.  Bautista-Lopez left Rolando to live with her parents on three occasions: (1) for a couple of weeks in December 2013; (2) for four weeks in January 2014, after she had broken her ankle; and (3) from June to August 2014.  Whenever she left Rolando, he would call and tell her that he would

3

take her back by force and threaten to harm her family if she did not return to him. Bautista-Lopez and her parents did not go to the police because they feared that he would carry out his threats and because Rolanda had "connections" with the Maras gang in El Salvador. Bautista-Lopez also did not believe that the Salvadoran police would protect her because they do "nothing" to protect people. Instead, they immediately release those they detain, and the aggressor typically returns even angrier towards his victim.

The IJ denied Bautista-Lopez's application for asylum, withholding of removal, and CAT relief, concluding that her testimony was not credible and she failed to provide any persuasive corroborating evidence. The IJ further concluded that, even if Bautista-Lopez was credible and reasonably corroborated her claims, she still was not statutorily eligible for asylum based on five additional findings. First, the IJ found that the harm that she had suffered did not rise to the level of persecution required by the INA. Second, addressing only one of Bautista-Lopez's three proposed social groups[1]—"El Salvadoran women in domestic relationships who are unable to leave"—the IJ concluded that her proposed social group was legally cognizable under *Matter of A-R-C-G-,*[2] but she did not show that she was a

---

[1] In her pre-hearing brief, Bautista-Lopez proposed that she fell in three proposed social groups: (1) "El Salvadoran women who are viewed as property by virtue of their position in a domestic relationship"; (2) "El Salvadoran women in domestic relationships who are unable to leave"; and (3) "El Salvadoran women in domestic relationships."

[2] *Matter of A-R-C-G-*, 26 I. & N. Dec. 388, 389 (BIA 2014).

member of that group because she had previously left Rolando and therefore had the ability to leave him.  Third, the IJ found that she failed to show that her membership in her proposed social group was the central reason for the abuse.  Fourth, the IJ found that she failed to demonstrate that she had a well-founded fear of future persecution.  Fifth, the IJ found that she did not demonstrate that the Salvadoran government was unable or unwilling to protect her.  The IJ further concluded that, because Bautista-Lopez did not show that she was eligible for relief under the lower burden of proof for an asylum claim, she could not establish that she was entitled to withholding of removal.  The IJ determined that Bautista-Lopez's CAT claim failed as well, given that the Salvadoran government's efforts to combat violence against women, although not entirely successful, supported a finding that it would not acquiesce in such conduct.

Bautista-Lopez appealed to the BIA.[3]  The BIA affirmed the IJ's decision.  It concluded that the IJ did not clearly err in finding that she was not a member of her proposed group, "El Salvadoran women in domestic relationships who are unable

---

[3] *Matter of A-B-*, 27 I. & N. Dec. 316, 316 (2018) overruled *Matter of A-R-C-G-* while Bautista-Lopez's appeal was pending.  Recognizing this, Bautista-Lopez provided two additional proposed social groups to the BIA: "El Salvadoran women" and "El Salvadoran women in a domestic relationship who oppose male domination."  She asserted that, if the BIA found that the groups she originally proposed were not cognizable in light of *Matter of A-B-*, it should remand her case to the IJ to consider whether she was persecuted on account of her membership in either of the additional social groups.

to leave," because she was not "unable to leave" her relationship.[4]  And the BIA agreed with the IJ's conclusion that Bautista-Lopez had not established that the Salvadoran government was unable or unwilling to protect her because the IJ did not clearly err in finding that Bautista-Lopez provided insufficient evidence to "convincingly demonstrate" that the laws and customs in El Salvador would prevent her from obtaining protection.

The BIA also affirmed the IJ's rejection of Bautista-Lopez's remaining claims.  The BIA concluded that, because Bautista-Lopez failed to establish her eligibility for asylum, her withholding of removal claim failed as well.  It also determined that Bautista-Lopez was not entitled to CAT relief because the IJ did not clearly err in finding that she failed to establish that she would more likely than not be tortured by or with the acquiescence of a public official or person acting in an official capacity in El Salvador.  This petition for review followed.

## II.    Standard of Review

We review only the decision of the BIA, except to the extent that it adopted the IJ's decision or expressly agreed with the IJ's reasoning.  *Gonzalez v. U.S.*

---

[4] The BIA listed the three social groups that Bautista-Lopez initially proposed and determined that those groups lacked particularity.  In a footnote, the BIA further determined that two of the three social groups that Bautista-Lopez had originally proposed—"El Salvadoran women who are viewed as property by virtue of their position in a domestic relationship" and "El Salvadoran women in domestic relationships who are unable to leave"—were impermissibly circular.  The BIA did not address the two additional social groups that Bautista-Lopez had raised for the first time in her brief to the BIA.

*Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).  "In this case, because the BIA agreed with the IJ's findings, and made additional observations, we review both decisions."  *Rodriguez v. U.S. Atty. Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013).

With respect to a petition for review of a BIA decision, we review conclusions of law *de novo* and factual determinations under the substantial evidence standard.  *Gonzalez*, 820 F.3d at 403.  Whether a particular social group is cognizable under the INA is a legal issue reviewed *de novo*.  *Id.*  Questions regarding whether the BIA gave reasoned consideration to an issue are also reviewed *de novo*.  *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016).  Under the substantial evidence standard, we review the evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision.  *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006).  The agency's decision will be affirmed "if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"  *Id.* (quoting *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005)).  We cannot "reweigh the evidence from scratch" and will reverse findings of fact "only when the record compels a reversal."  *Id.* (quotation marks omitted).

## I.  Discussion

To establish eligibility for asylum, the applicant bears the burden of proving that she is a refugee under the INA. *See* 8 U.S.C. § 1158(b)(1)(B); *Sepulveda*, 401 F.3d at 1230. The INA defines a "refugee" as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). To meet this burden, an applicant must provide credible evidence establishing past persecution, or a well-founded fear of future persecution, on account of a statutorily protected ground. *Li Shan Chen v. U.S. Att'y Gen.*, 672 F.3d 961, 964–65 (11th Cir. 2011). Under either route, an applicant also must show that she was unable to avail herself of the protection of her home country. *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007). This requirement stems from the statutory definition of "refugee," which encompasses only those who are "unable or unwilling" to avail themselves of the government's protection. 8 U.S.C. § 1101(a)(42)(A); *see also* 8 C.F.R. § 208.13(b)(1), (b)(2)(i)(C). An applicant's failure to report persecution by a private actor to the local authorities is "generally fatal" to her claim, though it may be excused if the she convincingly demonstrates that the government would have been unable or unwilling to protect her. *Lopez*, 504 F.3d at 1345; *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 950 (11th Cir. 2010).

8

We need not address the majority of Bautista-Lopez's claims of error because we affirm the BIA's determination that petitioner cannot demonstrate eligibility for asylum based its finding that she failed to prove the Salvadoran government is unable or unwilling to protect her.[5]  Because she cannot meet this requirement, her claim must fail regardless of her ability to meet other statutory requirements.  *Ayala*, 605 F.3d at 950 ("[A]n applicant who alleged persecution by a private actor must prove that he 'is unable to avail [him]self of the protection of h[is] home country' by presenting evidence that he reported the persecution to local government authorities or that it would have been useless to do so.") (second and third alterations in original).  Bautista-Lopez did not report the violence or threats perpetrated by Rolando to the police.  As we said in *Lopez*, a failure to report is "generally fatal" to an asylum claim.  *Lopez*, 504 F.3d at 1345.  Nor is this a situation where the police were the persecutors, such as in *Ayala*.  605 F.3d at 950.  Instead, Bautista-Lopez suffered from the criminal actions of a private individual.  Therefore, she must have proven that "it would have been useless" to report the domestic violence to government authorities.  *Ayala*, 605 F.3d at 950.

---

[5] Petitioner also asks that we remand this case to the BIA to address her request to consider new social groups added on appeal after *Matter of A-B-* came out.  While normally it would be appropriate to remand for the BIA to determine whether a social group is cognizable under the INA in the first instance, *Gonzales v. Thomas*, 547 U.S. 183, 186–87 (2006), we decline to do so here because such an exercise would be futile, given our affirmance of the BIA's other rulings in this case.

Bautista-Lopez argues that she conclusively demonstrated that the police were unable or unwilling to protect her based on three pieces of evidence: (1) the 2016 country report for El Salvador, (2) a 2013 declaration from a women's rights attorney in El Salvador, and (3) a 2014 letter from an American professor specializing in international women's rights. These sources indicate that domestic violence is a pervasive problem in El Salvador, with less than effective enforcement to combat the problem. However, these sources also chronicle efforts taken by the El Salvadoran government to address these problems. Specifically, there are laws in place that criminalize domestic violence; the government sponsors public awareness campaigns regarding domestic violence; the government provides programs for victims of domestic violence, including shelters; and, as of 2016, the government has established new courts specifically tasked with resolving complaints of violence against women in at least three major cities. The record also demonstrates, in sources not relied on by the petitioner, that the government has formed a task force charged with creating and executing a national plan to address violence against women generally; the government "obliges every state institution to tackle violence against women"; and, as early as 2011, the government had established police units that "specialize[] in helping women victims of violence."

10

Our standard of review compels us to affirm the BIA on the basis of the substantial evidence in the record that the Salvadoran government has undertaken efforts to prevent domestic violence and protect victims of it.  Even assuming a reasonable interpretation of the sources discussed above might reach the opposite conclusion, "[o]ur task is not to determine whether the inferences [Bautista-Lopez] draws from [the evidence] are reasonable. . . . Our review is more limited."  *Silva*, 448 F.3d at 1237.  As we have stated before,

> [u]nder the substantial evidence standard, we cannot look at the evidence presented to the BIA to determine if interpretations of the evidence other than that made by the BIA are possible.  Rather, we review the evidence that was presented to determine if the findings made by the BIA were unreasonable.

*Adefemi*, 386 F.3d at 1029.  Even though the record indicates that domestic violence is a problem in El Salvador and that the government struggles to control it, we cannot say the record compels the opposite conclusion of the BIA regarding the government's willingness or ability to help Bautista-Lopez.  *See Matter of A-B-*, 27 I. & N. Dec. at 320 ("The mere fact that a country may have problems effectively policing certain crimes . . . or that certain populations are more likely to be victims of crime, cannot itself establish an asylum claim.") (reversed on other grounds).  We thus affirm the BIA's conclusion that Bautista-Lopez has not demonstrated she is eligible for asylum.

11

Because Bautista-Lopez fails to meet her burden of asylum, she cannot meet the more stringent burden required for withholding of removal. *See Sepulveda*, 401 F.3d at 1232–33; 8 U.S.C. § 1231(b)(3)(A).

With respect to Bautista-Lopez's CAT claim, substantial evidence supports the agency's conclusion that she failed to demonstrate that the Salvadoran government would acquiesce in her torture. "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18(a)(7). We have affirmed the BIA's holding that a government does not "acquiesce" to torture in circumstances where it "actively, albeit not entirely successfully, combats" the illegal activities. *Reyes-Sanchez*, 369 F.3d 1239, 1243 (11th Cir. 2004). As discussed above, the materials that Bautista-Lopez attached to her application indicate that the Salvadoran government actively attempts to combat domestic violence. Accordingly, we deny Bautista-Lopez's claim.

**PETITION DENIED.**