[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 25, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12907

_____

Agency No. A97-204-149

GLORIA ARCIBELLY LOPEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 25, 2007)

**ON PETITION FOR REHEARING**

Before CARNES and WILSON, Circuit Judges, and STAGG,[*] District Judge.

CARNES, Circuit Judge:

---

[*] Honorable Tom Stagg, United States District Judge for the Western District of Louisiana, sitting by designation.

We grant the government's petition for rehearing, withdraw our previous opinion dated July 6, 2007, and published at 490 F.3d 1312, and substitute the following opinion in its place:

Gloria Arcibelly Lopez, a Colombian native, joined the Colombian Liberal Party in 1995 as a community coordinator, providing humanitarian assistance to residents of poor communities and conducting seminars on the principles of the Liberal Movement. In January 1998 she began receiving threatening phone calls from the Revolutionary Armed Forces of Colombia, the FARC. The callers instructed her to abandon her activities with the Liberal Party. Lopez did not report the calls to the police.

In April 1999, Lopez returned to Colombia after spending six months in the United States with her mother. She resumed her Liberal Party activities, and in September of that year, after leaving a community event, she was approached by a man and a woman who identified themselves as FARC members, insulted her, and told her that she should resign from the Liberal Party and not come back to the area. Lopez continued her work. On November 27, 1999, she was confronted by a man and two women.[1] They told her: "We are from FARC revolutionary

_____

[1] The IJ's order states that Lopez was attacked by two women, but Lopez's own testimony, which we must accept as true, indicates that she was attacked by two women and a man.

2

militias and we already warned you that you should not return to these places."
Then they began hitting her about the face and arms, eventually throwing her to
the ground. Nothing was stolen from Lopez, but as a result of the attack she was
forced to seek medical attention. The medical report found: "[c]onclusive trauma
on [her] face, thorax and arms," lacerations on her forearm and elbow, and at least
some bruising. Again, Lopez did not file a police report.

After that attack, Lopez withdrew from her political activities for some time.
Then in June 2001, Lopez resumed her humanitarian work. Even though she tried
to be more discrete, local residents warned her that members of the FARC were
asking about her. The FARC made threatening phone calls both to Lopez's place
of work and to a rental property she owned, which resulted in Lopez once more
stopping her community involvement for a while. Again, she made no police
report.

In August 2002 Lopez and her mother began conducting training
workshops, which were supported by the Liberal Party, to teach local women how
to manage their household finances. She was warned by her students on October
12, 2002 that she needed to be careful, and on October 19, 2002, at the end of a
session, three armed men burst into the classroom and told Lopez: "We are
members of FARC's urban militia[;] we sent you a message last week with one of

our students.  We don't want any shit workshops in our territory because what you are doing is trying to brainwash our people and buy votes for those SOB politicians."  Lopez left Colombia and arrived in the United States on November 8, 2002.

On July 15, 2003, the Department of Homeland Security issued Lopez, who had overstayed her visa, a notice to appear.  At a hearing in October 2003 Lopez appeared and conceded her removability.  She sought asylum, withholding of removal, and relief under the Convention Against Torture.  Although the IJ failed to make an explicit credibility finding, she stated:  "we are to take everything that she has told the Court today at face value."  Even though she accepted Lopez's testimony as true, the IJ found that she had failed to meet her burden of proof in establishing refugee status and denied all three of her requests.

More specifically, the IJ found that Lopez had not established that she had suffered past persecution, because the activities she engaged in that drew the ire of FARC were community-based and not political in nature, the menacing phone calls and threats she received were not severe enough, and she had failed to show that the one physical attack on her was more than a random act of violence.  The IJ also held that Lopez's claims were due to be denied "because in this case she does not even contact the authorities in order to obtain their protection first before

4

traveling outside of her home country to obtain the protection of the United States."

Lopez timely appealed the IJ's decision to the BIA, challenging the denial of her asylum and withholding of removal claims but abandoning her CAT claim. The BIA adopted and affirmed the IJ's decision "as described herein." The BIA stated it agreed with the IJ "that because the respondent did not seek protection from law enforcement authorities in Colombia after her encounters with the [FARC] . . . she failed to demonstrate that the Colombian government is unable or unwilling to protect her." This appeal followed.

Lopez now contends that the BIA erred (1) in finding that she did not suffer past persecution sufficient to merit asylum and (2) in denying her petition for relief on the ground that she had failed to seek help from the Colombian authorities, which she claims would have been futile.

## I.

When the BIA issues a decision, we review only that decision, except to the extent the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). The BIA's legal determinations are reviewed de novo. D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). However, any factual determinations are reviewed under the substantial

5

evidence test, and we "must affirm the . . . decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283–84 (quotation marks omitted). That means a finding of fact will be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal. . . . " Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

## II.

Lopez first contends that the IJ erred in finding that she did not suffer past persecution in Colombia. We will not address this contention because the IJ's finding that it concerns was not adopted by the BIA in its decision and therefore does not form any part of the order currently under review. We can review only the final administrative order, which is the decision of the BIA. Chen v. United States Att'y Gen., 463 F.3d 1228, 1230 (11th Cir. 2006) ("Where the BIA issues a decision, we review that decision, except to the extent that it expressly adopts the IJ's opinion."); Al Najjar, 257 F.3d at 1284 ("We review only the Board's decision, except to the extent that it expressly adopts the IJ's opinion.").

The only conclusion of the IJ that the BIA adopted and affirmed was the one that Lopez's asylum and withholding of removal claims were deficient because

she did not first seek the protection of the Colombian government. Because this is all that we are permitted to review, we deny Lopez's petition to the extent that it asks us to review the past persecution part of the IJ decision.

### III.

Lopez also contends that the IJ erred in denying her asylum and withholding of removal claims because she had failed to seek help from the Colombian authorities, which she argues would have been futile. The BIA did adopt the IJ's decision that by failing to seek protection from law enforcement authorities in Colombia after her encounters with FARC, Lopez failed to demonstrate that the Colombian government was unable or unwilling to protect her. We can and will review that part of the decision.

We have said that "[a]s a matter of immigration policy, a government may expect that an asylum seeker be unable to obtain protection anywhere in his own country before he seeks the protection of another country." Mazariegos v. United States Att'y Gen., 241 F.3d 1320, 1327 (11th Cir. 2001). As a result, in order to satisfy her burden of establishing asylum eligibility, Lopez must show not only past persecution or a well-founded fear of future persecution, but also that she is unable to avail herself of the protection of her home country. Id.

7

The BIA ruled that because Lopez did not "seek protection from law enforcement authorities in Colombia after her encounters with the [FARC] . . . she failed to demonstrate that the Colombian government is unable or unwilling to protect her." Although it is not entirely clear, the ruling appears to be that the failure to seek protection without more is enough to defeat a claim for asylum. If so, that decision is not fully consistent with In re S-A-, 22 I. & N. Dec. 1328, 1335 (BIA 2000). Although the failure to report persecution to local government authorities generally is fatal to an asylum claim, Mazariegos, 241 F.3d at 1327, the BIA in S-A- held that it would be excused where the petitioner convincingly demonstrates that those authorities would have been unable or unwilling to protect her, and for that reason she could not rely on them. 22 I. & N. Dec. at 1335. Lopez contends that through her testimony and the country reports she has convincingly made the showing required by S-A-, and that is a contention which neither the IJ nor the BIA addressed. It should be addressed on remand. See Gonzalez v. Thomas, 547 U.S. 183, 186, 126 S. Ct. 1613, 1615 (2006) (per curiam) ("A court of appeals 'is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.' Rather, 'the proper course, except in rare circumstances, is to

8

remand to the agency for additional investigation or explanation.'" (quoting <u>INS v. Ventura</u>, 537 U.S. 12, 16, 123 S. Ct. 353, 355 (2002) (per curiam)).

Accordingly, we **DENY** in part and **GRANT** in part the petition for review and **REMAND** this proceeding to the BIA for further consideration consistent with this opinion.