[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13687

Non-Argument Calendar

_____

MAIRA YOHANA FLORES-ZUNIGA,
EYMI ORDONEZ-FLORES,
SOFIA ORDONEZ-FLORES,

Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

Agency No. A212-909-286

_____

Before JILL PRYOR, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Maira Flores-Zuniga,[1] a native and citizen of Honduras, seeks review of the Board of Immigration Appeals' (BIA) final order denying her motion for remand and affirming the immigration judge's (IJ) denial of her application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT).  First, she contends that the BIA and the IJ erroneously denied her petitions for asylum and withholding of removal given what she contends is substantial evidence to the contrary.  Second, she argues that the BIA and IJ erred in denying her CAT claim because, she says, the record compels the conclusion that she would be tortured by or with the acquiescence of the Honduran authorities if she returns.  Third, she argues that the BIA abused its discretion in not remanding this case to the IJ in light of

_____

[1] Flores-Zuniga's petition for review is filed on behalf of herself and Sofia and Eymi Ordonez-Flores, her minor children and derivate asylum applicants.

the Attorney General's vacatur of *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018) ("*Matter of A-B- I*"), in *Matter of A-B-*, 28 I. & N. Dec. 307 (A.G. 2021) ("*Matter of A-B- III*"). After careful consideration of the claims, we deny the petition.

## I

Flores-Zuniga argues that the BIA erred in affirming the IJ's denial of her asylum claim. The Attorney General may grant asylum to a non-citizen who meets the Immigration and Nationality Act's (INA) definition of a "refugee." 8 U.S.C. § 1158(b)(1)(A). A refugee is defined as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

*Id.* § 1101(a)(42)(A). The applicant bears the burden of proving that she is a refugee. *Id.* § 1158(b)(1)(B)(i). As relevant to us, the applicant must demonstrate that she (1) was persecuted in the past *because of* a protected ground or (2) has a well-founded fear that she will be persecuted in the future *because of* a protected ground. *Rodriguez Morales v. United States Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007). This is also known as the "nexus" requirement. *Id.*

An applicant for asylum who alleges persecution by a private actor additionally must prove that her home country is unable or unwilling to protect her. *Ayala v. United States Att'y Gen.*, 605 F.3d 941, 950 (11th Cir. 2010). In such cases, failure to seek protection by reporting alleged persecution to local authorities "generally is fatal to an asylum claim." *Lopez v. United States Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007). However, this failure is excused where the applicant convincingly demonstrates the futility of seeking assistance from those authorities because they would have been unable or unwilling to protect her. *Id.*

For challenges to a denial of asylum, we primarily review the decision of the BIA. *Ayala*, 605 F.3d at 947–48. We review the IJ's opinion only "to the extent that the BIA expressly adopts the IJ's opinion or reasoning." *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011). Here, the BIA issued its own opinion and adopted portions of the IJ's decision and reasoning. Therefore, we review both the IJ's and BIA's decisions, to the extent of their agreement. *Id.*

We review the BIA's factual determinations under the substantial-evidence test. *Gonzalez v. United States Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). Under that highly deferential standard, we must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (*en banc*). We view the evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor

of that decision. *Id.* at 1027. The mere fact that the record might support a contrary conclusion is not enough to justify a reversal of the agency's findings. Under the substantial-evidence test, a decision "can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise." *Kueviakoe v. United States Att'y Gen.*, 567 F.3d 1301, 1304 (11th Cir. 2009).

Here, the BIA assumed that Flores-Zuniga established past persecution and membership in a cognizable particular social group. Accordingly, this Court need not address those issues because we do not consider issues that were not reached by the BIA. *Gonzalez*, 820 F.3d at 403. That leaves Flores-Zuniga with two remaining grounds regarding this claim: (1) the Board's state-protection analysis and (2) the nexus requirement. We'll take those in turn.

First, substantial evidence supports the BIA's agreement with the IJ that Flores-Zuniga did not establish that Honduran authorities would be unable or unwilling to protect her. Specifically, the IJ found that police referred Flores-Zuniga to an institution that provides support for domestic violence when she reported her abuser to the police. While domestic violence and violence against women are prevalent, underreported, and under-prosecuted in Honduras, the IJ found that Honduran law penalizes domestic violence and rape and provides protective measures. According to the IJ's findings, the Honduran government also provides services to victims of domestic violence in hospitals, health centers, and domestic violence shelters, including in Flores-Zuniga's neighboring

town of Choluteca. Given this evidence, the IJ and the BIA did not err in finding that Honduran authorities were not unwilling or unable to protect her.

Second, substantial evidence supports the BIA's agreement with the IJ that there is no nexus between the persecution and Flores-Zuniga's proposed particular social groups. The IJ found no evidence that the abuser was motivated by Flores-Zuniga's membership in a particular social group. Instead, the IJ found that the abuser was motivated by reasons specific to Flores-Zuniga, such as their arguments about extramarital affairs and family finances. The IJ also found that there was no evidence that the abuser harmed other individuals in the same social group. Thus, Flores-Zuniga's membership in a particular social group was not a central factor for the abuse she suffered. Rather, the BIA found that she was the victim of private acts of violence. Accordingly, the record does not compel the conclusion that Flores-Zuniga established nexus.

To qualify for withholding of removal under the INA, the non-citizen petitioner must demonstrate that she would "more likely than not" be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion if returned to the country of removal. *D-Muhumed v. United States Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004); *see* 8 C.F.R. § 208.16(b). If a petitioner is unable to meet the burden of proof for asylum, she cannot meet the more stringent standard for withholding of removal. *D-Muhumed,* 388 F.3d at 819. Having failed to meet her burden for her asylum claim, Flores-Zuniga also

21-13687                Opinion of the Court                7

necessarily fails the higher burden required for withholding of removal.

## II

Flores-Zuniga further argues that the BIA erred in affirming the IJ's denial of her CAT claim. An applicant seeking protection under CAT must establish that it is "more likely than not" that she would be tortured if removed to the proposed country of removal. *Reyes-Sanchez v. United States Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004) (citing 8 C.F.R. § 208.16(c)(2)). Additionally, the individual must show that the torture would be by or with the acquiescence of the government. *Id.* Here too we subject the agency's findings to the substantial-evidence test. *Lingeswaran v. United States Att'y Gen.*, 969 F.3d 1278, 1286 (11th Cir. 2020).

The regulations define torture, in relevant part, as "any act by which severe pain or suffering . . . is intentionally inflicted on a person" when that harm is inflicted by or with acquiescence of a government official. 8 C.F.R. § 208.18(a)(1). Acquiescence "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id.* § 208.18(a)(7). This Court has explained that a government official does not "'acquiesce' to torture where it 'actively, albeit not entirely successfully, combats' the alleged torture." *Lingeswaran*, 969 F.3d at 1294.

Here, the BIA agreed with the IJ's determination that she did not meet her burden of proof for protection under CAT. The IJ found that Flores-Zuniga failed to demonstrate a clear probability that she would be tortured if she returned to Honduras. Although domestic violence continues to be a serious problem in Honduras, the IJ found that she had not shown a particularized risk of torture over other similarly situated members of the public. The IJ also found that she had not established that she would be tortured by, at the hands of, or with the acquiescence or willful blindness of the government of Honduras. The government services already described are evidence that the Honduran government was "actively" addressing domestic violence. Thus, the record does not compel the conclusion that it was more likely than not that Flores-Zuniga would be tortured by or with the acquiescence of the Honduran government upon her return.

## III

Flores-Zuniga separately argues that an intervening change in law required the BIA to remand her case to the IJ for additional fact-finding. We construe a motion to remand as a motion to reopen proceedings, the denial of which we review for an abuse of discretion. *See Ali v. U.S. Att'y Gen.*, 643 F.3d 1324, 1329 (11th Cir. 2011). "This review is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner. The moving party bears a heavy burden, as motions to reopen are disfavored, especially in removal proceedings." *Zhang v. United*

21-13687               Opinion of the Court                    9

*States Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009) (citations omitted).

Flores-Zuniga contends that the intervening change in law requires the IJ to engage in further fact-finding to determine whether her proposed particular social groups were cognizable. Flores-Zuniga argues that without this initial determination, neither the IJ nor the BIA was permitted to reach the issue of nexus. As such, Flores-Zuniga argues that remand was necessary for the IJ to "determine in the first instance whether Flores-Zuniga has established her eligibility for protection under the current legal framework." (Blue Br. at 26).

Flores-Zuniga's contention requires us to examine the history of the law applicable to her case. In *Matter of A-R-C-G-*, the Attorney General recognized that "married women in Guatemala who are unable to leave their relationship" was a cognizable particular social group. 26 I. & N. Dec. 388, 394–395 (A.G. 2014). That gave petitioners like Flores-Zuniga a legal foothold to prove that their membership in a particular social group of domestic violence victims is cognizable.

The Attorney General overruled *Matter of A-R-C-G-* in *Matter of A-B-* I. *Matter of A-B-*, 27 I. & N. Dec. at 319, 346. There, the Attorney General reasoned that particular social groups that are based on private violence are not legally cognizable because they do not exist independently of the persecution that the members of the group experience. *Id.* at 334–36. This is the framework under which Flores-Zuniga's claim was adjudicated.

But in *Matter of A-B- III*, the Attorney General vacated *Matter of A-B- I*. *Matter of A-B- III*, 28 I. & N. Dec. at 308. The Attorney General explained that *Matter of A-B- I*'s broad statement that victims of private criminal activity would not qualify for asylum except in exceptional circumstances threatened to create confusion and discourage careful case-by-case adjudication of asylum claims. *Id.* at 308–09. Accordingly, the Attorney General stated that IJs and the BIA should no longer follow *Matter A-B- I* when adjudicating pending or future cases and should instead follow pre-*Matter of A-B- I* law, including *Matter of A-R-C-G-*. *Id.* at 309.

In short, the current legal framework returns to *Matter of A-R-C-G-*, which recognizes that certain particular social groups based on private violence are cognizable for purposes of asylum. *Matter of A-R-C-G-*, 26 I. & N. Dec. at 395. But even if an applicant overcomes the cognizable social group barrier, "the issue of nexus will depend on the facts and circumstances of an individual claim." *Id.*

The BIA did not abuse its discretion in denying Flores-Zuniga's motion to remand based on the agency's findings. Even though the IJ determined that she did not belong to a particular social group under *Matter of A-B- I*, the BIA assumed that her particular social groups were cognizable before conducting its nexus analysis. In coming to its conclusion on nexus, the BIA relied exclusively on pre-*Matter of A-B- I* administrative decisions. In doing so, the BIA agreed with the IJ's findings that the evidence was insufficient to establish that Flores-Zuniga suffered harm *because of*

21-13687              Opinion of the Court              11

her particular social group, a factual determination that *Matter of A-R-G-C-* left to the IJ and BIA. Therefore, remand was not necessary because the intervening change in law does not bear on the BIA's conclusions in this case.

To the extent that Flores-Zuniga argues that the BIA or IJ engaged in impermissible fact-finding in violation of 8 C.F.R. § 1003.1(d)(3)(iv), her claim also fails. The IJ faithfully followed administrative guidance to "make comprehensive findings of fact . . . rather than just those findings pertinent to one issue that the Immigration Judge may deem dispositive of the case." *In Re S-H-*, 23 I. & N. Dec. 462, 465 (BIA 2002). Contrary to Flores-Zuniga's contention, the IJ was permitted to reach the issue of nexus after determining that she did not meet the particular-social-group requirement. In turn, the BIA permissibly relied on the IJ's nexus findings to deny Flores-Zuniga's motion for remand. *Id.*

\*    \*    \*

Because there is substantial evidence that supports the BIA's denial of Flores-Zuniga's petition for asylum, withholding of removal, and CAT claim, and because the BIA acted within its authority in not remanding this case, we deny the petition for review.

**PETITION DENIED.**