[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11846

Non-Argument Calendar

_____

LUCRECIA MARINA LUCAS MAZERIEGOS,
JOSE MANUEL CIFUENTES LUCAS,

Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A206-442-069

_____

Before JORDAN, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Lucrecia Marina Lucas Mazeriegos, a native and citizen of Guatemala, petitions for review of the Board of Immigration Appeals's final order affirming the immigration judge's denial of her application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment.[1]  We deny the petition.

## I.

Lucas first argues that the Board failed to give reasoned consideration to her application for asylum and withholding of removal.  Specifically, Lucas argues that the Board erred by declining to remand her case for a new hearing after an intervening change in the law governing her asylum claim.  As a result, Lucas contends that the Board's order affirming her removal mischaracterized the immigration judge's factual findings and impermissibly engaged in its own factfinding.  We find no error.

When Lucas was first placed into removal proceedings in 2015, the governing precedent on asylum cases involving domestic violence was *Matter of A-R-C-G-*, 26 I & N Dec. 388 (B.I.A. 2014).

_____

[1] Lucas's petition for review is filed on behalf of herself and Jose Manuel Cifuentes Lucas, her son and derivate asylum applicant.

This decision found that a particular social group composed of "married women in Guatemala who are unable to leave their relationship" was cognizable for asylum purposes. *Id.* at 392–95. Lucas initially planned to claim membership in this social group for her asylum application. But in 2018, the Attorney General overruled *Matter of A-R-C-G-* in *Matter of A-B-* (*Matter of A-B- I*), 27 I & N Dec. 316 (A.G. 2018). Thus, at Lucas's removal hearing in 2019, her counsel conceded that she could no longer pursue her asylum claim based on her original particular social group, which relied on *Matter of A-R-C-G-*. She reframed her particular social group as "women facing fear in Guatemala because of domestic violence," which the immigration judge ruled was not a cognizable social group for asylum purposes.

Between her hearing and her appeal to the Board of Immigration Appeals, the Attorney General changed course. In *Matter of A-B-* (*Matter of A-B- III*), 28 I & N Dec. 307, 307–09 (A.G. 2021), the Attorney General vacated *Matter of A-B- I*, thereby restoring *Matter of A-R-C-G-* as governing law. Accordingly, Lucas requested that the Board remand her case back to the immigration judge for renewed factfinding under the appropriate legal standard.

The Board was not obligated to remand. In Lucas's initial hearing, the immigration judge had specifically found that Lucas "was able to leave her husband." The Board's decision identified that *Matter of A-B- III* had restored *Matter of A-R-C-G-* but stated that Lucas could not show membership in even her original particular social group because the immigration judge had found that Lucas

"was able to leave her abusive husband." Therefore, remand was not necessary because the immigration judge had made the necessary factual findings to support denial of asylum, even after the intervening change in the law. And the Board did not mischaracterize the immigration judge's factual findings, nor did it engage in its own factfinding. Lucas's reasoned consideration challenge to the Board's denial of her asylum and withholding of removal claims fails.

Our dissenting colleague contends that we "cannot say whether the legal error on the applicable standard affected the immigration judge's factual finding." Dissent at 2. With respect, we disagree. Agency guidance instructs immigration judges to "make comprehensive findings of fact . . . rather than just those findings pertinent to one issue that the Immigration Judge may deem dispositive of the case" in order to avoid unnecessary remands for additional factfinding after "unforeseen change[s] or interpretation[s] of law." *In re S-H-*, 23 I & N Dec. 462, 465 (B.I.A. 2002). The immigration judge here heeded that advice. She stated on the record that she viewed Lucas's newly proposed particular social group as indistinguishable from the one advanced in *Matter of A-R-C-G-* and rejected in *Matter of A-B- I*. That alone supported her decision to deny relief under the then-prevailing legal standard. But the judge then found, in the alternative, that Lucas was not a member of her proposed, *Matter of A-R-C-G-* based social group anyway because she could leave her husband. Remand was thus unnecessary because the intervening change in the law did not affect this alternative factual finding, adopted by the Board.

## II.

Next, Lucas argues that the Board's determination that Lucas was not a member of the particular social group of "married women in Guatemala who are unable to leave their relationship" was unsupported by substantial evidence. In reviewing for substantial evidence, we will affirm the Board's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc) (quotation omitted). A finding of fact will be reversed only when the record "compels" it, not just because the record "may support a contrary conclusion." *Id.*

The record shows that, although Lucas remains legally married to her husband, she left their shared home and lived separately from him at her parents' house for sixteen years prior to seeking asylum in the United States. Although she had been physically abused during her marriage, after their separation, her husband never harmed her again. About annually, her husband would show up at her parent's house, armed, and demand her return. But he never used the weapon and was always successfully turned away without incident by Lucas's mother. And Lucas never sought police intervention, at any point. Based on this, the Board's conclusion that Lucas was able to leave her abusive relationship was supported by more than enough evidence.

## III.

Finally, Lucas argues that the Board failed to give her Convention Against Torture claim reasoned consideration. We

disagree.  On a reasoned consideration challenge, "the Board does not need to do much."  *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019).  It "need not address specifically each piece of evidence the petitioner presented."  *Id.* (alteration adopted) (quotation omitted).  We have held that the Board does not give reasoned consideration in three types of circumstances: when it "misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record."  *Id.* at 1334 (quotation omitted).  Ultimately, for the Board's decision to exhibit a lack of reasoned consideration, it must "force[] us to doubt whether we and the Board are, in substance, looking at the same case."  *Id.*

Here, the Board identified the correct legal standard, explaining that Lucas failed to show that she was more likely than not to be tortured if returned to Guatemala by or with the acquiescence of a government official.  It then explained that Lucas was unable to show a probability of harm rising to the level of torture because she could successfully relocate within Guatemala away from her husband—as evidenced by the fact that she had resided at her parent's home for sixteen years prior to seeking asylum in the United States.

That was enough to generate a decision reviewable by this Court.  Although Lucas faults the Board for not discussing evidence relevant to the government acquiescence prong of the torture standard, the Board was not required to discuss "each piece of

evidence" in the record. *Id.* at 1333 (quotation omitted). And because the Board found that Lucas did not establish that it was more likely than not she would suffer harm rising to the level of torture if returned to Guatemala, it was not also required to rule specifically on the separate requirement of government acquiescence. *See Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1326 (11th Cir. 2021).

★    ★    ★

**PETITION DENIED.**

23-11846                JORDAN, J., Dissenting                1

JORDAN, Circuit Judge, Dissenting:

I would send this matter back to the BIA for further proceedings. With respect, I dissent from the court's denial of Ms. Lucas' petition for review.

When the immigration judge resolved the asylum claim, the governing standard for cases involving domestic violence was the one articulated in *Matter of A-B-,* 27 I. & N. Dec. 316 (A.G. 2018). As a result, Ms. Lucas' original proposed group—married women in Guatemala who are unable to leave their relationship—was not then cognizable. In addressing asylum, the immigration judge understandably followed *Matter of A-B-* and focused only on Ms. Lucas' *alternative* proposed group—women facing fear based upon domestic violence. *See* App. 222-23. So when the immigration judge made a factual finding that Ms. Lucas was able to leave her husband, *see* App. 223, that finding was made under the asylum standard articulated in *Matter of A-B-* and was not geared towards the group that Ms. Lucas had initially proposed.

By the time the asylum claim got to the BIA, the asylum standard had changed again and was back to the one set out in *Matter of A-R-C-G,* 26 I. & N. Dec. 388 (B.I.A. 2014). *See Matter of A-B-,* 28 I. & N. Dec. 307 (A.G. 2021). As a result, Ms. Lucas' original proposed group was again cognizable. In my view, the BIA should not have relied on a factual finding made by the immigration judge under a now-incorrect standard (and pursuant only to an alternative proposed group) to reject Ms. Lucas' asylum claim. *See Acharya v. Holder,* 761 F.3d 289, 301 (2d Cir. 2014) ("The

BIA's substitution of the proper [legal] standard at the intermediate appellate level without considering how the error may have colored the [immigration judge's] factual findings of fact cannot plausibly be read to support the conclusion . . . that 'the [BIA] has considered the issue[.]'") (citation omitted).  Because I cannot say whether the legal error on the applicable standard affected the immigration judge's factual finding, i.e., whether the error was harmless, I would vacate the BIA's order and send the matter back for further proceedings before the immigration judge under the correct asylum standard and pursuant to Ms. Lucas' original proposed group. *Cf. United States v. Brown*, 934 F.3d 1278, 1307 (11th Cir. 2019) (explaining that "[i]f a district court applies an incorrect legal standard in reaching a factual conclusion, the resulting finding is not insulated by the clear error standard," and the appropriate remedy is to remand if we "cannot say" whether the erroneous legal standard affected the factual finding).

I recognize that the immigration judge also made an adverse credibility finding against Ms. Lucas and concluded that this finding was sufficient to foreclose all of the relief she requested. *See* App. 216-19.  But the BIA did not adopt this portion of the immigration judge's order, *see* App. 2, and that means that the adverse credibility finding is not properly before us. *See, e.g., Lingeswaran v. U.S. Atty. Gen.*, 969 F.3d 1278, 1287 n.12 (11th Cir. 2020).  I would allow the BIA to decide on remand whether to adopt the immigration judge's adverse credibility finding, and if does so to then address (a) whether that finding is adequately supported by the record and (b) whether it suffices to deny Ms. Lucas all forms of requested relief.