**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 24, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

ELSA YOLANDA GALDAMEZ-
PERAZA; ELSY MARIA LARA-
GALDAMEZ,

    Petitioners,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 24-9517
(Petition for Review)

_____

## ORDER AND JUDGMENT[*]

_____

Before **HARTZ**, **BALDOCK**, and **ROSSMAN**, Circuit Judges.

_____

    Elsa Yolanda Galdamez-Peraza, a native and citizen of Honduras, petitions for

review of a decision by the Board of Immigration Appeals (Board or BIA) affirming

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the denial of her applications for asylum and withholding of removal.[1]  Exercising

jurisdiction under 8 U.S.C. § 1252(a), we deny the petition.

## BACKGROUND

### I.    Underlying Facts

Ms. Galdamez-Peraza is married to a man in Honduras.  The couple has two

daughters.  The older daughter is married and lives in Honduras, while the younger

daughter accompanied Ms. Galdamez-Peraza to the United States.

Before the immigration judge (IJ), Ms. Galdamez-Peraza testified that her

husband verbally, physically, and sexually abused her.  The abuse began "when his

sister began meddling with their marriage and suggesting she was seeing other men."

R. Vol. 1 at 64.  When he became drunk, he hit Ms. Galdamez-Peraza.  If the

couple's daughters tried to intervene, he would curse at them or hit them with a belt.

In mid-August 2018, Ms. Galdamez-Peraza received an anonymous

threatening letter on her door.  She believed it came from her husband's family, who

lived on the same property, and she decided to file charges.  Authorities made her

sister-in-law sign a statement saying she would not say anything about

Ms. Galdamez-Peraza or come to her house.  But Ms. Galdamez-Peraza's husband

fled when he realized the police were looking for him, and they were not able to

locate him.

---

[1] Elsy Maria Lara-Galdamez, Ms. Galdamez-Peraza's daughter, is a derivative beneficiary of her mother's asylum application.  She presents no claims or arguments distinct from Ms. Galdamez-Peraza's arguments.

A few days later, her husband returned to the house. He left when Ms. Galdamez-Peraza threatened to call the police. Ms. Galdamez-Peraza left Honduras a few days after that, on August 21, 2018. Her husband has not directly contacted her since, although he asked their older daughter where her mother was.

## II.     Legal Standards

For asylum, a petitioner must establish she is a refugee. *See* 8 U.S.C. § 1158(b)(1)(A). A refugee is a person who is "unable or unwilling to return to the country of origin 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645-46 (10th Cir. 2012) (quoting 8 U.S.C. § 1101(a)(42)(A)) (emphasis omitted). When a petitioner relies on membership in a particular social group, as Ms. Galdamez-Peraza does, she must show that the group (1) shares "a common, immutable characteristic . . . beyond the power of an individual to change," (2) is defined with particularity, and (3) is socially distinct, meaning it is "*perceived* as a group by society." *Rodas-Orellana v. Holder*, 780 F.3d 982, 990-91 (10th Cir. 2015) (internal quotation marks omitted).

"Persecution is the infliction of suffering or harm upon those who differ [on protected grounds] in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." *Ritonga v. Holder*, 633 F.3d 971, 975 (10th Cir. 2011) (internal quotation marks omitted). "[P]ersecution may be inflicted by the government itself, or by a non-governmental group that the government is unwilling or unable to control." *Id.* (internal quotation marks omitted).

3

The standard for withholding of removal is "more stringent" than that for asylum. *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012). "To be eligible for withholding of removal, an applicant must demonstrate that there is a clear probability of persecution because of [her] race, religion, nationality, membership in a particular social group, or political opinion." *Id.* (internal quotation marks omitted).

## III.    Agency Proceedings

Ms. Galdamez-Peraza conceded removability and applied for asylum and withholding of removal.[2] Resting her claims on membership in a particular social group, she identified the applicable groups as "(1) Honduran women, (2) Honduran women who refuse to be subservient in domestic relationships, and (3) Honduran women who are viewed as property." R. Vol. 2 at 433.

The IJ concluded that "Honduran women who refuse to be subservient in domestic relationships" and "Honduran women who are viewed as property" were not cognizable social groups because the record did not contain evidence to show they were socially distinct in Honduras. The IJ further found that Ms. Galdamez-Peraza "did not provide sufficient evidence to show that it was her gender or nationality that were the central reason for the harm she experienced." R. Vol. 1 at 66. Rather, her harm arose out of her husband's jealousy when he was drunk. Finding the harm was

---

[2] Ms. Galdamez-Peraza also sought relief under the Convention Against Torture (CAT). Because she presents no argument regarding the CAT, we need not consider the agency's denial of CAT relief. *See Addo v. Barr*, 982 F.3d 1263, 1266 n.2 (10th Cir. 2020).

caused by private rather than state actors, the IJ further found that the record contained "clear evidence the Honduran government took action in response to [her] reports of abuse." *Id.* The IJ therefore concluded that the Honduran government was not unable or unwilling to control Ms. Galdamez-Peraza's husband. She denied the applications for asylum and withholding of removal.

The Board upheld the IJ's decision. Writing its own short opinion, it affirmed the determination that two of the proposed social groups were not cognizable, the finding that Ms. Galdamez-Peraza failed to show her past harm and feared future harm were on account of membership in her proposed groups, and the finding that she failed to show the Honduran government was unable or unwilling to control her husband. Accordingly, it dismissed the appeal.

Ms. Galdamez-Peraza filed a timely petition for review.

## DISCUSSION

### I. Standards of Review

"Where, as here, the BIA affirms an immigration judge's decision in a single Board member's brief order, the BIA's affirmance is the final agency decision, and we limit our review to the grounds for the BIA's decision." *Escobar-Hernandez v. Barr*, 940 F.3d 1358, 1360 (10th Cir. 2019). "However, we may consult the immigration judge's fuller explanation of those same grounds." *Id.*

We review legal questions de novo and findings of fact for substantial evidence. *See id.* at 1360-61. Under the substantial-evidence standard, "the

administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## II.    Asylum

### A.    Particular Social Group

Ms. Galdamez-Peraza first argues the Board erred in upholding the IJ's determination that "Honduran women who refuse to be subservient in domestic relationships" is not a cognizable particular social group. Ms. Galdamez-Peraza analogizes to *Matter of A-R-C-G-*, in which the Board determined that "married women in Guatemala who are unable to leave their relationship" was a cognizable particular social group. 26 I. & N. Dec. 388, 392-93 (BIA 2014) (internal quotation marks omitted). Her argument misses the mark for at least two reasons.

Although Ms. Galdamez-Peraza ostensibly targets the rejection of her proposed group "Honduran women who refuse to be subservient in domestic relationships," the bulk of her argument appears to address a different social group—married Honduran women.[3] But she did not identify this group during the agency proceedings, and we decline to consider a group that a petitioner did not propose before the agency, *see Rivera-Barrientos*, 666 F.3d at 647 n.2; *Miguel-Pena v. Garland*, 94 F.4th 1145, 1158 (10th Cir. 2024) (recognizing that exhaustion before

---

[3] Ms. Galdamez-Peraza states that she "shares [with the applicant in *A-R-C-G-*] the immutable characteristic of the female gender and also the marital status of married and unable to leave the relationship"; "[i]t is the very status of married women in Honduran society that allows them to be targeted for violence"; and "[t]he central reason she was abused and targeted is because she was a married woman." Pet'r's Opening Br. at 12, 13.

the Board is not jurisdictional, but remains subject to rules regarding waiver and forfeiture), *pet. for cert. filed*, (U.S. July 3, 2024) (No. 24-12).

As for the group she actually identified before the agency, the Board held she failed to show "Honduran women who refuse to be subservient in domestic relationships" comprise a socially distinct group. Ms. Galdamez-Peraza's opening brief, however, fails to address social distinction. She does not identify any record evidence that Honduran society perceives "Honduran women who refuse to be subservient in domestic relationships" as a group. *See A-R-C-G-*, 26 I. & N. Dec. at 394 (noting consideration of social distinction requires examining the evidence regarding the relevant society's perceptions). She thus fails to show the Board erred.

**B.    Nexus**

Refugee status requires persecution be "on account of" a protected ground. 8 U.S.C. § 1101(a)(42)(A). This concept is referred to as "nexus." *See Miguel-Pena*, 94 F.4th at 1159. Ms. Galdamez-Peraza's second argument challenges the Board's determination that she failed to establish nexus. Whether nexus is shown "is a question of fact that we review for substantial evidence." *Id.* (internal quotation marks omitted).

Ms. Galdamez-Peraza again analogizes to *A-R-C-G-*. In *A-R-C-G-*, however, the Department of Homeland Security stipulated that the nexus requirement was satisfied. 26 I. & N. Dec. at 395. The Board noted, "in cases where concessions are not made and accepted as binding, these issues will be decided by on the particular facts and evidence on a case-by-case basis as addressed by the Immigration Judge in

the first instance." *Id.* Thus, the fact that nexus existed in *A-R-C-G-* does not necessarily mean nexus exists in this case.

Ms. Galdamez-Peraza testified before the IJ that her husband abused her when he was drunk because he was jealous and his sister's remarks inflamed that jealousy. This testimony constitutes substantial evidence supporting the agency's finding that her husband's conduct was on account of his jealousy rather than on account of Ms. Galdamez-Peraza's membership in her proposed groups. But even a lack of substantial evidence would not require us to grant the petition for review, because Ms. Galdamez-Peraza still has to overcome the finding that the Honduran government was not unable or unwilling to control her husband. *See Ritonga*, 633 F.3d at 975 (recognizing that "persecution may be inflicted by the government itself, or by a non-governmental group that the government is unwilling or unable to control" (internal quotation marks omitted)). And, as we discuss next, we reject her challenge to that finding.

## C.   Ability and Willingness to Control

In arguing the Board erred in upholding the IJ's finding that she failed to show the Honduran government was unable or unwilling to control her husband, Ms. Galdamez-Peraza highlights the evidence supporting her position. But findings of fact are reviewed only for substantial evidence, *see Escobar-Hernandez*, 940 F.3d at 1360, and in employing this standard of review, we do not reweigh the evidence, *see Yuk v. Ashcroft*, 355 F.3d 1222, 1236 (10th Cir. 2004).

The agency's finding is supported by substantial evidence. The record shows Honduras has laws against spousal violence, including spousal rape, and the government prosecutes even if victims do not press charges. The government also operates women's offices in each municipality that provide services, including prevention of violence. Notably, police took Ms. Galdamez-Peraza's report and searched for her husband, and authorities also acted to keep her sister-in-law from harassing her. Police investigation undermines an argument that the government is unwilling or unable to control offenders. *See Ritonga*, 633 F.3d at 976; *Ortiz-Araniba v. Keisler*, 505 F.3d 39, 42 (1st Cir. 2007). The fact that police were unable to locate her husband in the days between her report and her departure for the United States does not compel the conclusion that the Honduran government was unable or unwilling to control him. *See Nahrvani v. Gonzales*, 399 F.3d 1148, 1154 (9th Cir. 2005) (holding that evidence of unsuccessful investigation did not compel the conclusion that the German government was unable or unwilling to control persons harassing petitioner).

## III.    Withholding of Removal

Ms. Galdamez-Peraza's failure to satisfy the burden of proof for asylum means she also necessarily failed to satisfy the higher standard for withholding of removal. *See Escobar-Hernandez*, 940 F.3d at 1362.

## CONCLUSION

We deny the petition for review.

Entered for the Court

Bobby R. Baldock
Circuit Judge